STATE *et al. v.* WILSON *et al.*

(*Jackson*, April Term, 1942.)

Opinion filed May 29, 1942.

56

J. L. Fry, W. M. Miles, and C. W. Miles, III, all of Union City, for complainant.

David G. Caldwell and J. H. Glover, both of Union City, for defendant.

Mr. Justice Neil delivered the opinion of the Court.

The original bill in this cause was filed in the Chancery Court of Obion County on July 23, 1936. It was filed in the name of the State of Tennessee and Obion County for the use and benefit of the Obion River Drainage District No. 1, located in Obion County, for the purpose of having a lien declared on the property of the defendants and to sell said property to enforce payment of delinquent taxes due the Drainage District.

The Obion River Drainage District No. 1 was created, pursuant to and by authority of Chapter 185 of the Acts

of 1909, by decree in the County Court of Obion County in the year 1914. All of the defendants in this cause were parties to the proceeding in the County Court. The bill alleges there was a bond issue of $250,000 issued to make the improvements as set out in the said case of *William Wilson et al.* v. *Obion Valley Land and Investment Co.* in the County Court of Obion County, which amount was expended in digging a ditch and making a levy, etc.; that an assessment was duly made against various pieces of property located in said Drainage District, including the property of these defendants, and that the defendants paid said assessments from 1914 to 1922. Delinquent taxes began in the year 1922. The defendants filed a plea in abatement to the original bill on the ground that "No authority for such suit was ever given by proper authorities of the Drainage District," and that said suit was unauthorized and improperly brought. The Chancellor overruled said plea and thereupon a demurrer was filed in which the same questions were substantially raised. Another ground is, "(3) It is not shown that the parties filing the bill have any interest in the Drainage District, either as bondholders or creditors or otherwise. No profert of any bonds is exhibited whereby complainants may show that they have any real interest in the assessment sued on." By leave of the Court, the complainants amended the bill so as to make the Southern General Life Company a party complainant and for the use of said company the bill is filed. The amendment recites and alleges that the complainant Southern General Life Company is a corporation under the laws of Tennessee, and that it owns the entire bond issue of the Obion River Drainage District No. 1, and that the bonds and coupons are due and unpaid; and that the board of directors of the said Drainage District have heretofore

refused after being requested to bring suit and still refuse, and that therefore they have the right to use the name of the State of Tennessee and Obion County for the enforcement of their lien, etc. To the bill as amended the defendants demurred upon several grounds, most of which, if not all, had been passed on by the Chancellor and overruled. This last demurrer was overruled.

Without going into further detail regarding the pleadings, upon the full presentation of the matters involved the Chancellor entered a decree appointing C. H. Cobb receiver. The said receiver, over the defendants' objection, was permitted to file an intervening petition in which he adopted the original bill and all amendments thereto. In naming C. H. Cobb as receiver, the Chancellor held that nothing was provided in the original Act of 1909 for bringing a suit on the part of an individual bond or coupon holder; that later, by Chapter 73, Section 3, of the Public Acts of 1923, it was provided that a holder of any bond, or interest coupon, has the right to make application to any court of competent jurisdiction within the county or counties of said district for appointment of a receiver therefor, and it shall be the duty of the court to appoint a receiver in such case. The Act of 1923 further provides (we quote from the Chancellor's opinion): "Any receiver so appointed shall have power to institute suits for the collection of delinquent assessments in the same manner as the district itself would have had and with the same effect and to do all things necessary to collect delinquent assessments or other debts due the district."

When the bill was amended appointing the receiver, the defendants moved to dismiss the bill upon several grounds, which was overruled and defendants answered.

Prior to the filing of the cross-bill in this case these defendants had filed three answers, which will be referred to later. On August 25, 1941, about five years after the original bill was filed and after the filing of several motions, demurrers, and three answers, the defendants filed the cross-bill. The record discloses that the cross-complainants did not seek any affirmative relief against the taxes which had been assessed against them and which had been delinquent since 1922, until the date of filing the said cross-bill. A period of twenty-seven years elapsed from the date of the assessment and nineteen years from the time the taxes became delinquent, until the cross-bill was filed. The defendants did not at any time prior to filing of this cross-action question the proceeding in the County Court of Obion County organizing the Drainage District, the method of making the assessments against their property, or the amount of the assessments. Under the statute they had the right of appeal to the Circuit Court. There is no question that the County Court had jurisdiction to organize and set up the Drainage District in question. In the several answers filed there was a denial of the due organization of the Drainage District, because of changes in the boundary line, and because the plans of the district were substantially departed from without notice and reassessment to the landowner; denied lawful issuance of the bonds; and that the lands were assessed according to benefits conferred; that the assessments were a lien on the land; that the Southern General Life Company owned all the bonds, and that it could use the name of the state and county in suit; pleaded laches to the suit and the statute of limitations of six years and ten years; that the bonds were not issued by proper authority; failure of consideration; that the bondholder was not a holder in due course;

denied the corporate existence of the Southern General Life Company; denied the validity of the proceedings by which the district was established, etc. (See Transcript, p. 50.) The cross-bill re-affirms all these defenses and prays for affirmative relief. It goes into great detail in setting out all these defenses.

The cross-defendants, complainants in the original bill, filed a demurrer to the cross-bill on September 13, 1941, containing fifteen separate grounds. The Chancellor overruled and disallowed grounds 1, 2, 8, 9, 10, and 11, and sustained said demurrer upon grounds 3, 4, 5, 6, 7, 12, 13, 14, and 15, and dismissed the cross-bill. The action of the Chancellor is made the basis of several assignments of error in this Court. The first two grounds of the demurrer which were sustained, 2 and 3, are "that cross-complainants are guilty of laches in filing the cross bill;" and 4, "The bill shows upon its face that these cross-complainants are estopped to seek the relief sought." It is the insistence of the cross-complainants that the receiver is required under the statute, sections 4369, 4370, of Michie's Code, to bring a separate suit, and that the Chancellor was in error in allowing him to act and proceed otherwise.

■ We have examined these two sections of the Code and they do not support the contention that the receiver must bring a separate and independent suit. True, he may do so and should, but it does not deny the right of the Chancellor to allow him to intervene by petition where he is a necessary party. It is true, generally speaking, that where the Court permits the filing of an amendment which does not change the cause of action, or where new parties are brought in, the said amendment relates back to the filing of the original bill, but, where the parties complainant had no legal authority to institute such suit

in the beginning and the defendant promptly challenged such authority, the bringing in by amendment of the only party having authority to sue should not be allowed to prejudice the rights of these defendants.

In the case of *Gardner* v. *Quinn*, 154 Tenn., 167, 289 S. W., 513, 514, in an opinion by Mr. Justice COOK, the following language is used: "The doctrine that the amendment relates to the commencement of the action is a fiction, and cannot be applied so as to injuriously affect the substantive rights of the defendants or to defeat their defense of the statute of limitations." Citing *Flatley, Adm'r*, v. *Memphis & C. Railroad Co.*, 56 Tenn. (9 Heisk.), 230, and other cases.

On page 236 in *Flatley, Adm'r*, v. *Memphis & C. Railroad Co., supra*, the Court uses the following language: "It may be conceded that in general, and for most purposes, the amendment in a case like the present will relate back to the day on which the original process was sued out; but this fiction of relation cannot be allowed to obtain where it would work injustice to the adversary party by destroying or taking from him the benefit of an existing legal defense to the action. In a case, therefore, where the time of the commencement of the action may become important in reference to the statute of limitations, or other matter of defense, the effect of an amendment changing the form of the action must be restricted to the time when, from the record, it appears to have been granted. From that time only in such case can the plaintiff be regarded as *rectus in curia*." See, also, *Western Electrical Co.* v. *Pickett*, 51 Colo., 415, 118 P., 988, 38 L. R. A. (N. S.), 702, Ann. Cas. 1913A, 132.

It is unnecessary to cite cases to the effect that an individual bondholder cannot sue to enforce collection of bonds and coupons held by him. The Act of the Legis-

lature expressly provides that suits of this character must be brought by a receiver and not by an individual bondholder, and the Chancellor so held in this cause. This Court held in a recent case, *Fayette County, for Use of Loosahatchie River Drainage District et al.* v. *A. J. Graham et al.*, 178 Tenn. 54, 156 S. W. (2d), 379, that suits of this character could be brought only by a receiver and not by any individual bondholder. The complainants in the original bill could have prayed for the appointment of receiver under Chapter 73 of the Acts of 1923, and upon proper application it would have been the plain duty of the Court under said Act to make an appointment.

Since the Southern General Life Company, the owner of the District bonds, had no standing in court to enforce the payment of assessments against the property of these defendants and could not use the name of the State of Tennessee or Obion County to enforce any right or claim against them because of its alleged ownership of the bonds, it must follow that the appointment of C. H. Cobb as receiver in no way deprives the defendants of their right to interpose as a valid defense that one or more or all assessments are barred by the statute of limitations, and that such statute ceased to run as of the date of the appointment of the receiver and the filing by him of the intervening petition in this cause. It is through no fault of the defendants that the original bill was not brought at the outset in the manner and form expressly provided by the statute. While they are not permitted in this proceeding to attack the decree in the Obion County Court establishing the Drainage District, the manner and form and amount of assessments and the issuance of bonds to make the alleged improvements, they are not estopped from making all legal and equitable defenses to which they may be properly entitled, includ-

ing the statute of limitations, as a bar to the collection of the assessments, and that said statute ceased to run as of the time of the appointment of C. H. Cobb receiver.

The foregoing, as we see it, is a complete answer to the cross-complainants' insistence that the decree of the chancellor appointing receiver "deprives them of the additional right to plead the Statute of Limitations." If these parties ceased paying assessments against their property because of any change in the plan of the Drainage District, or because of no benefits to the property, or because the District had been abandoned, they should have at once proceeded in the Chancery Court to attack the decree of the County Court directly for any such irregularity or illegality in the proceedings.

The several grounds of demurrer, which are made the basis of certain assignments of error, will be considered together. Counsel for the complainants in the original bill demurred to the cross-bill (3rd ground) because the cross-complainants are guilty of laches; (4th ground) that they are estopped to seek the relief prayed for; (5th ground) because the cross-bill is a collateral attack upon the judgment of the Obion County Court in which the Obion River Drainage District was organized and which had exclusive jurisdiction over the subject matter and all the parties; (6th ground) because the cross-bill is a collateral attack upon the assessments rendered in the County Court of Obion County; and (12th ground) because the cross-bill constitutes a collateral attack upon the proceedings of the Obion County Court in the organization of the Obion Drainage District; and (15th ground) that cross-complainants waited twenty-seven years before filing a bill seeking certain relief and are therefore guilty of laches.

An examination of the record discloses, in fact it is not seriously controverted, that the Drainage District was organized under the Act of the Legislature of 1909, and that the cross-defendants were made parties to the proceeding in the County Court. The Obion County Court had exclusive jurisdiction of the matter. There was no appeal. The assessments were duly made and apportioned amongst the several landowners by decree and certified to the County Trustee. If there was any irregularity in said proceeding or any step taken that was prejudicial to the rights of cross-complainants, they had the right of appeal and they had the further right later on to attack the decree on the ground of any illegality and for fraud, all of which was not done. For the first time in this collateral proceeding they attack the entire judgment and decree of the Court of Obion County establishing this Drainage District. The Chancellor decreed that such collateral attack could not be made by them in this cause. We are of opinion that he committed no error in sustaining the demurrer upon this ground. The case of *Madison County* v. *Alston,* 162 Tenn., 599, 600, 39 S. W. (2d), 745, cited by counsel for cross-complainants, does not support their contention. On the contrary, it rather supports the judgment and decree of the Chancellor. Cross-complainants make substantially the same defense that was made by the landowners in *Madison County* v. *Alston,* that the lands received no benefit from the Drainage District; that the assessment exceeded the benefits conferred. It was expressly held in this case that they could not make these questions in any collateral proceeding.

In the case of *Obion County* v. *Head,* 155 Tenn., 590, 594, 296 S. W., 354, 355, the question was raised regarding the validity of assessments made by the County Court, and this Court, speaking through Mr. Justice Cook, said:

"Through his answer the defendant asserts the right to contest the validity of the assessment by the county court in this proceeding to enforce payment. He insisted that his lands were not benefited by the establishment of the improvement district and by the assessment thereon, and presented proof of the fact that his land was not benefited, or at least the assessments exceeded the benefits conferred. By his answer the defendant raises a question of fact, foreclosed by the judgment of the county court in the proceeding through which the district was established and the assessment made against his lands. Ordinarily, the question of special benefit to the property upon which the assessment is made is one of fact, and the determination of the fact by the tribunal having power to make the assessment is controlling." Citing *Carriger* v. *Town of Morristown*, 148 Tenn., 585, 256 S. W., 883, and other cases. The learned Justice, speaking for the Court, continues at p. 595 using the following language: "It is not denied that the defendant was a party to the county court proceeding in which the district was established and the assessment made upon his property. That being true, there can be no inquiry in this collateral proceeding to determine the question of benefits. Parties to such proceedings in another court, or before another tribunal, cannot in a subsequent independent proceeding, brought to collect delinquent assessments, resist assessments made after opportunity for a hearing, that have become final by a prior judgment which establishes facts contrary to the contention presented in the subsequent proceeding. This proposition requires, we think, no elaboration." Citing cases.

The foregoing disposes of cross-complainants' contention "that the bonds are not valid and enforceable obligations of the district." If they have any equitable rights

growing out of any compromise of assessments entered into between other alleged delinquents, and particularly the Southern General Life Company, and authorized representatives of the district or Obion County, such rights must later be considered and determined by the Chancellor.

We find no merit in cross-complainants' contention that the Southern General Life Company "has no right to own these bonds" and that the contract to purchase them is *ultra vires*. Section 6204 of Michie's 1938 Code has no application. This section sets out certain classes of stocks and bonds that life insurance companies are permitted to purchase. It also provides in the same section that they may purchase "other good and solvent securities, subject to the approval of the commissioner of this state." If the contract to purchase these bonds required the approval of the Commissioners of Insurance, there is nothing in the record to show that the contract did not have his approval. We fail to find wherein the Southern General Life Company has violated its charter in any respect.

The motion made by counsel for appellees to dismiss the appeal for the reasons stated therein is overruled. The several grounds of the demurrer were clearly before the Court and the assignments of error based thereon were a sufficient compliance with the rules of this Court. The several assignments of error are overruled and the decree of the Chancellor dismissing the cross-bill is sustained in all respects except as indicated in the foregoing opinion. The cause is remanded to the Chancery Court of Obion County for further proceedings.