STROTHER *v.* REILLY.

(*Jackson.* June 12, 1900.)

1. TAX SALE. *Void, when.*

A tax sale of lands, which are at the time of sale subject to a deed of trust, made under a chancery proceeding after the owner's death, is void, where his heirs are not made parties, although the trustee or his heirs and the beneficiary in the trust deed are made parties. (*Post, pp. 51, 52.*)

2. SAME. *Rights of purchaser upon setting aside tax sale.*

A purchaser of land at a void tax sale, against whom suit has been instituted by the original owner or his heirs to recover same, may by cross-bill, if the suit is in equity, or by original bill, if the suit is at law, recover and collect by sale of the lands, the amount of the purchase price paid thereon, so far as it was applied to the owner's benefit, and all amounts paid on subsequently accruing taxes, and all sums expended in improvements of the property to be paid out of rents received, to the extent that the value of the land was enhanced thereby, together with interest on all said amounts. (*Post, pp. 52-58.*)

Code construed: § 5009 (S.); § 3991 (M. & V.); § 3261 (T. & S.).

Cases cited and approved: Caldwell *v.* Palmer, 6 Lea, 654; Elliott *v.* Cochran, 2 Sneed, 468; Martin *v.* Turner, 2 Heis., 384; Arrington *v.* Grissom, 1 Cold., 522; Campbell *v.* Bryant, 1 Leg. R., 137; Jones *v.* McKenna, 4 Lea, 630; Trousdale *v.* Maxwell, 6 Lea, 161; Quinby *v.* Transportation Co., 2 Heis., 596; Wicks *v.* Sears, 4 Lea, 298.

Cited and distinguished: Ross *v.* Mabry, 1 Lea, 226.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. JNO. L. T. SNEED, Chancellor.

Strother *v.* Reilly.

F. H. Heiskell for Strother.

Malone & Malone for Reilly.

McAlister, J. This bill in ejectment was preferred by Geo. W. Strother, his wife, Annie, and James Kinnaird against James Reilly *et al.* to recover possession of lot 511 on Hill Street, in Memphis. It was alleged in the bill that James Reilly was in possession of the lot and claimed title thereto by virtue of a decree of the Shelby County Chancery Court in the cause of the *City of Memphis* v. *Austin M. Bull,* filed November 5, 1874, and an amended bill filed August 30, 1883, consolidating said cause with that of the *State, etc.,* v. *Butler.* The object of those bills was to enforce the payment of delinquent taxes on said lot due the State of Tennessee, the county of Shelby and the city of Memphis. Reilly purchased the property at the tax sale on April 11, 1885, and on February 8, 1886, the sale to him was confirmed at the sum of $375. Reilly was awarded a writ of possession and continued to pay subsequently accruing taxes down to 1892. The theory of the present bill is that the title of Reilly acquired in those consolidated causes was void for the reason that Austin M. Bull, at the time of the rendition of the decree, was dead, and his heirs were not parties defendant. Reilly filed an answer and cross bill, in which he denied any title or right of possession in complainants,

21 p—4

and called for proof of same. He averred that if Bull ever had any title, it was merely equitable, and that such equitable title had been since abandoned. That, on the day he was supposed to have obtained the deed, namely, July 14, 1859, he executed a trust deed of the lot in question to Henry Wade, as trustee, to secure to William H. Cheeseman, from whom he bought the property, the payment of the purchase money, $1,349, evidenced by three notes, due at three months, ten months, and fifteen months from date, and that this trust deed had never been released, nor the purchase money paid, and that neither Bull nor the complainants had ever exercised any acts of ownership over the property, and if they ever had any title, it had been abandoned. He set up laches on the part of the complainants, and claimed that if they had ever been entitled to the lot, their right to the possession had been lost by their laches.

It was further averred that Austin M. Bull and William H. Cheeseman were described as nonresident defendants in said tax proceedings, and Henry Wade, the trustee, having died, Susan Wade, Henry and Belle Wade, heirs at law of said Henry Wade, trustee, were also made defendants. It was insisted that, if Austin M. Bull was dead at the date of the rendition of the decree in the tax cases, that the heirs of Henry Wade, trustee, who held the legal title, were be-

fore the Court, and that this title passed to and was vested in James Reilly.

In his cross bill Reilly averred and showed by the evidence that he paid out the following sums in good faith upon said lot:

| | | |
|---|---:|---:|
| Purchase money and interest thereon..$ | 679 | 50 |
| Taxes paid since purchase, and interest thereon ............................ | 254 | 80 |
| November 14, 1889, for sidewalk, and interest thereon.................... | 111 | 65 |
| Building house, and improvements..... | 300 | 00 |
| Total.............................$1,345 | 90 | |

Cross complainant prayed that in the event the Court should finally hold and decree that the Bull heirs are the owners of said lot and entitled to the possession of the same, then, as said parties are seeking equity, that they be compelled to do equity, and that he have a decree for said sum of $1,345 laid out and expended by him, and that the same be declared a lien on the lot, and that the same be sold on a credit of at least six months, so as to bar the equity of redemption.

At a former day of the term we affirmed the decree of the Chancellor adjudging complainants' title superior and that Reilly's title was void for the reason that at the time the decree was pronounced in the tax cases Austin M. Bull was dead and his heirs at law were not made parties

to said proceedings. It was further held that it was not sufficient that the heirs of Henry Wade, trustee, were made parties, the rule in this State being that the beneficiaries in the trust must be made parties to such a proceeding. Gibson's Suits in Chancery, Sec. 157. Neither the heirs of Bull nor Cheeseman were made parties defendant. We held, however, that Reilly, under the prayer of his cross bill, was entitled to a lien on the lot for the purchase money and taxes paid by him down to and including the year 1892, with interest, and also the value of the improvements erected by him to the extent they enhanced the value of the property, less rents and profits. Shannon's Code, § 5009; *Caldwell* v. *Palmer,* 6 Lea, 654.

A very earnest petition is now presented, in which the Court is asked to reconsider its decree to the extent that a lien was declared on the property in favor of Reilly for sums paid by him on account of purchase money, taxes, and improvements. It is insisted that the doctrine of *caveat emptor* applies in all cases of tax sales; that if the proceedings are void the purchaser is remediless; that his payment is a voluntary one, and as there is no warranty at a judicial sale, the purchaser assumes all risks.

It has been held by this Court that "where an executor sold slaves under the Act of 1827 to pay debts of the estate, which sale was void for

failure · to make the heirs parties, it was held, on suit to · recover the slaves, that if the purchase money was in whole or in part received by the heirs, or appropriated to their use or for their benefit, they should be held bound for the same." *Elliott* v. *Cochran,* 2 Sneed, 468-71.

"So where land was sold under a void decree during the civil war, and the purchase money was paid in Confederate money, yet inasmuch as Confederate money had been used to pay the debts of the estate, it was held that upon recovery of the land the heirs must refund the value of the Confederate money used to pay debts of the estate, with interest from the time it was used, and the sum total was declared a lien on the land." *Martin* v. *Turner,* 2 Heis., 384.

"So where a slave was sold under a decree of the Circuit Court, which decree was void because the Court was without jurisdiction to hear the case, for the reason that it had not the equity · jurisdiction invoked, and hence had no jurisdiction of the subject-matter, it was held that the complainants should refund the purchase money, with interest in proportion in which it was received by the parties complaining." *Arrington* v. *Grissom,* 1 Cold., 522-25. See, also, *Campbell* v. *Bryant,* 1 Leg. R., 137.

"The foregoing decisions have been repeatedly affirmed, the Court saying that 'these decisions rest upon a principle of equity so ·obvious as to

commend them to our sense of justice, outside of
their binding authority as precedents.' " *Jones* v.
*McKenna,* 4 Lea, 630-41.

"And it is equally well settled that not only
the original purchaser of the land, but his vendee,
may have the benefit of this equity, by way of
subrogation, to the extent of the purchase money
paid which came to the use of the minors."
*Trousdale* v. *Maxwell,* 6 Lea, 161-4; *Caldwell* v.
*Palmer,* 6 Lea, 652-56.

"In the last case cited there is an extended
discussion and review of all the cases, and it is
said, in reference to this equity, 'It has been
enforced wherever a sale of land is rescinded for
any cause, either at the instance of the vendor
or vendee,' and (to quote the syllabus) it was
further declared that 'neither the statute of limi-
tations nor lapse of time will bar the assertion
of the right, if asserted in the adjustment of ac-
count between the parties, growing out of the re-
covery of the heirs.' " *Caldwell* v. *Palmer,* 6 Lea,
652-57.

"And if the land is recovered by an action of
ejectment at law, equity will, upon bill filed, af-
ford the same relief as if the heirs had filed
their bill asking to be put in possession." *Cald-
well* v. *Palmer,* 6 Lea, 652-57.

The principles enunciated in the foregoing cases
have been applied by this Court in tax cases.
In the case of *Quinby & Co.* v. *North American*

*Coal & Transportation Co.,* 2 Heis., 596, it appeared that Quinby & Co. filed a bill in the nature of a cross bill for the purpose of setting up a title to the land in controversy and claiming to have purchased the same at tax sales, or to be the assignee of others who had purchased. The Court held that on account of certain defects in the proceedings the tax sales were absolutely void and communicated no title, either legal or equitable. "It appears, however," said the Court, "that complainant paid taxes on said land not only for the years 1856 and 1857, but for a number of other years subsequent, and as they have discharged a charge upon the land fixed by law, they are entitled to be reimbursed the sums so paid." Attention is called to the fact that the purchases in that case were not made under a chancery proceeding, but under the old *ex parte* system.

In the case of *Wicks* v. *Sears,* 4 Lea, 298, it appeared that Wicks filed a bill charging that respondent had purchased the land at a sale for Federal taxes assessed during the war, and asking that said sale be declared void. This Court, constrained by decisions of the U. S. Supreme Court, held said sale valid, and dismissed complainant's bill. It appeared that during the litigation Sears was in possession of the property, but neglected to pay the taxes, whereupon a receiver was appointed to collect the rents. It further appeared

that prior to the appointment of a receiver and
while Sears was in possession of the property,
Wicks paid the current taxes. The Court held
that Wicks was entitled to be reimbursed out of
any funds in the hands of the receiver. The
only case apparently out of line with those cases
is that of *Ross* v. *Mabry,* 1 Lea, 226. But as
said by this Court in *Wicks* v. *Sears,* 4 Lea,
that was a case where a complainant sought to
have a lien on the land and a sale of it for
the repayment of the taxes, interest, and penalties,
on the simple allegation that he had bought it at
a tax sale, without even showing that his title
was defective. Neither the validity nor invalidity
of the title acquired was alleged. It was re-
marked in that case that the purchaser had paid
money for the use of the property owner, and
ought in good conscience be reimbursed, but that
the rule of *caveat emptor* seems to apply to tax
sales. We do not think the precise question here
was presented in *Ross* v. *Mabry,* since the bill
in that case asked that the purchaser have a lien
on land bought at tax sale for the taxes paid,
merely because the complainant became the pur-
chaser, and not because his title had failed or
was defective. When limited to its precise facts
the authority of that case is not questioned, but
so far as it is intimated therein that a purchaser
whose title has been adjudged void has no rem-
edy for his purchase money and subsequently ac-

cruing taxes paid by him, that case is not authority. It is in conflict with our own cases and the great weight of authority in the other States.

In the case of *Knox* v. *Dunn,* 22 Kansas, 883-4, Mr. Justice David J. Brewer, while a Judge of the Supreme Court of Kansas, said, viz.:

"This was an action to quiet title, brought by the owner of certain lots against the holder of a tax sale certificate thereon. It was conceded that the lots were subject to taxation, levy regular, and the valuation not excessive; also that the owner had paid no part of the taxes. Several defects are alleged in the assessment and the sale proceedings. These defects, we shall concede without deciding, were sufficient to invalidate the sale; yet, notwithstanding those defects, we think the plaintiff was not entitled to the judgment in this action, and for the cardinal rule of equity that he who seeks equity must first do equity. . . . Here a party, who admits that he owes an honest debt to the State, comes into a Court of Equity, and, without paying or offering to pay the debt, asks that the proceedings which the State has taken to collect that debt be adjudged void. We have already decided that an injunction will not lie under these circumstances. *City of Lawrence* v. *Killam,* 11 Kan., 499; *Challis* v. *Commrs. of Atchison County,* 15 Kan., 49. And we now decide that a lot owner cannot obtain

any such relief by changing the action to one for quieting title." *Knox* v. *Dunn,* 22 Kan., 883, 884; 1 Pom. Eq. Jur., Sec. 393, and notes.

"When the owner seeks, in a Court of Equity, to have a tax deed set aside and the cloud created thereby removed from his title, the familiar maxim, 'He who seeks equity must do equity,' will be applied, and he will be required to pay the amount for which the land was sold and all subsequently paid taxes, with interest, as a condition to relief." 25 Am. and Eng. Enc. Law, p. 735, and authorities cited. It is hardly necessary to add that it must appear in all cases that the taxes were due and were a charge upon the land.

In view of the settled law on this subject, we adhere to our former ruling, which declared that cross complainant was entitled to be reimbursed his purchase money and interest and all amounts paid by him on taxes subsequently accruing down to and including the year 1892. So far as the improvements are involved, that matter is regulated by § 5009, Shannon's Code, which provides, viz.:

"Persons holding possession in good faith under color of title are entitled to have the value of their permanent improvements set off against the rents and profits which the plaintiff may recover."

To the extent herein indicated, the decree of the Chancellor is reversed and the cause remanded for an account upon the principles herein stated. The costs of the appeal will be divided.