FOWLER v. TANKERSLEY.—222 S. W. (2d) 395.

Western Section.   November 29, 1946.

Petition for Certiorari denied by Supreme Court, February 3, 1947.

J. W. Rankin, of Martin, for complainant.

W. P. Moss, of Jackson, J. L. Fry, of Union City, Tipton & Tipton, of Covington, Holmes & Holmes of Trenton, for defendant.

ANDERSON, P. J. This bill was filed to remove a cloud from the title to a tract of 84 acres of land lying in Rutherford Fork Drainage District. In another proceeding instituted for that purpose it was ordered sold to satisfy delinquent drainage assessments. At this sale the defendant, C. H. Little, became the purchaser. Subsequently he conveyed it to defendant Tankersley for a valuable consideration. The basis of the present suit is the charge that the decree in the other proceeding ordering the sale was void. The defendants aver the contrary,

and moreover assert that as against the defendant, Tankersley, the complainant is equitably estopped to claim title to the land. The chancellor held the decree of sale void and accordingly granted the relief prayed for in the bill. The defendants appealed.

Upon the hearing this case was consolidated with that of Cooper v. Little.[1] However, the record in each case was sent up in a different transcript. They should have been in the same transcript.

Since we regard the defense of equitable estoppel as determinative, we need not consider in the present case the questions raised with respect to the validity of the sale ordered in the proceeding instituted to collect the delinquent drainage assessments.

On May 30, 1935, a suit was filed in the chancery court of Obion County for the purpose of enforcing liens on several tracts of land securing the assessments made in the proceeding establishing the Rutherford Fork Drainage District. Among the tracts involved in that case was one numbered 25, then owned by the complainant Grady Fowler, who was named defendant in the proceeding. He made no defense and allowed a pro confesso to be taken against him. This was followed by an order of sale entered at the April Term, 1936. The order was not executed until the 19th day of March, 1940. On the latter date it was offered for sale pursuant to the order and struck off to C. H. Little for the sum of $1100.00, which was paid in cash. On April 3, 1940, a decree was passed confirming the report of sale and divesting title out of Fowler and vesting it in C. H. Little as purchaser. On October 26, 1943, Little for a consideration of $2000.00, of which $1000.00 was paid in cash and the remainder evidenced by two notes, each in the sum of $500.00, conveyed the tract to the defendant Tankersley by special

[1] 29 Tenn. App. 685, 201 S. W. 2d 210.

warranty deed. Following his purchase the defendant, Tankersley, went into possession, and without objection on the part of the complainant, who knew of the fact, made improvements on the land to the value of $401.30.

The drainage district was organized in 1914, the assessments being spread over a period of 20 years. The first was due in 1915 and the last in 1934. The sale in the other proceeding was to satisfy the assessments for the years 1928 to 1934 inclusive, which aggregated $770.28, and was subject to the right of redemption. This, together with interest from the date of the sale and attorney's fees allowed by statute, made a total of $1067.60 outstanding against the tract at the time the sale was confirmed.

The bill in the present case was not filed until August 16, 1945.

The complainant and defendant were neighbors and friends of long standing. According to the evidence in the present case the tract was put up for sale twice for the purpose of satisfying the lien of the drainage assessments. Apparently the first sale was not confirmed and the second sale resulted.

The fact that the land was to be sold came to the notice of the defendant Tankersley. Just prior to the second sale he called upon his neighbor, Fowler, and asked him if he was going to do anything about the matter, indicating that if he was not, that he, Tankersley, might be interested in purchasing it. Fowler replied that "he thought he might come up here and bid it in if it didn't sell too high", but that if he, Tankersley, wanted to buy it, to "come ahead and bid on it." Tankersley told him that he would not do that because he was unwilling to bid against a friend and neighbor; that if Fowler was

going to make an effort to rescue his land he, Tankersley, would have nothing to do with the matter.

In this situation Tankersley did not attend the sale and dropped all idea of buying the land. So far as appears, Fowler did not attend the sale either, and made no bid on it, with the result that it was sold to Little. After the sale Fowler negotiated with Little for the purchase of the land and went so far as to make a bid on it, but it seems that nothing came of this. Fowler testifies that in the fall before Tankersley bought the tract from Little he told Tankersley about the bid he had made to Little, and also that he "wasn't going to redeem the land at the price", evidently referring to the amount required by statute to redeem. Fowler admits that in discussing the matter with Tankersley he made no claim to the land after it had been bought by Little.

In the course of conversations before Tankersley purchased from Little, Fowler convinced the former that he thought the land was not worth the amount it would take to redeem it, and that he was "done with it for good."

Moreover, following the sale, the complainant allowed Little, and later the defendant, to go into possession of the land, and otherwise use it as their own, without making any claim thereto, notwithstanding that under Code Section 4361 he had a right to continue in possession and was entitled to the rents and profits until the expiration of the period of two years from the date of the confirmation of the sale allowed for redemption, thus corroborating his representation to the defendant that he was no longer interested in the property. Being convinced of this fact by the complainant's conduct and representations and relying thereon, Tankersley entered into negotiations with Little for the purchase of

the land, with the result already stated. It also appears that the defendant could have bought the land originally at $600.00 or $700.00 less than he eventually paid for it had it not been that he was unwilling to bargain for it, until fully convinced that his friend Fowler was no longer interested in redeeming it.

After Tankersley had purchased from Little, Fowler told him that he had ''bought it mighty high but if things stayed up a few years I wouldn't be hurt so bad.'' As said, in none of his numerous conversations with Tankersley did Fowler ever make any claim to the property following the sale to Little. Upon the contrary, the undisputed evidence is that he led Tankersley to believe that he had no further interest in it whatever for the reason that he did not regard the land as being worth the amount of the assessments or the amount it would take to redeem it.

In granting the relief sought by the complainant, the chancellor did not require that the defendant be reimbursed for the amount of his outlay. However, a reference was ordered to ascertain the taxes paid by the defendant and the value of improvement, together with the reasonable rental value of the land, with the idea, no doubt, of laying the basis for an off-set.

From what has been said it appears that the complainant stood by for more than 9 years after the sale was ordered and for more than 5 years after it was executed and title vested in Little, without making any claim to the property, knowing that after his purchase Little, and later the defendant, were in possession and making valuable improvements thereon. It is not amiss to note also that the present bill was not filed until after the statute of limitations had run on all of the assessments made in connection with the organization of the drainage

district. Incidentally, the complainant testified that he never paid any of the assessments made against his property, the reason apparently being that he did not regard it as worth the amount required.

It appears therefore that if the decree is allowed to stand the complainant will have the land, benefited by the improvements resulting from the creation of the drainage district, without having paid or being liable for any of the assessments made to defray the cost; and the defendant will be out the amount he agreed to pay for the property with nothing to show for it. Can it be said that under the facts of this case the facilities of a court of equity can be used to bring about such a result? We think not.

From the facts hereinabove stated, about which there is no substantial dispute, it is apparent that after the purchase by Little, the complainant represented to the defendant that he was no longer interested in the property; that he would make no effort to redeem it; that it was entirely agreeable with him for the defendant to purchase it from Little; that by these representations the defendant was induced to make the purchase and would not have made it had said representations not been made.

It is obvious therefore that by his bill in this case the complainant seeks to repudiate the representations he made to the defendant, on the strength of which the latter would purchased the property. This, equity will not permit, because to do so would be to sanction unconscionable conduct and allow the complainant, whose representations were responsible for the transaction, relief at the expense of the defendant who was altogether innocent. Pomeroy's Eq. Jur., Vol. 2, Secs. 807, 809

and 821; Galbraith v. Lunsford, 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522.

It is true, that with reference to estates in land the doctrine which prohibits the owner from asserting his legal title by reason of his acts in pais is to be carefully applied. This, because it is opposed to the letter of the statute of frauds; but the jurisdiction of a court of equity within proper limitations to administer the doctrine in such cases is well settled. It may be applied wherever by intentional misrepresentations, misleading conduct or wrongful concealment, a person interested in an estate has misled another into dealing with it as if he were not interested. 2 Pomeroy's Eq. Juris. Secs. 807 and 821. Galbraith v. Lunsford, supra; Electric Light & Power Co. v. Bristol Gas, etc., Co., 99 Tenn. 371, 42 S. W. 19. It is sometimes said that actual fraud must be present before an estoppel can be set up against the owner of the legal title to land. But this is inaccurate. As used in this connection, the term "fraud" is virtually synonymous with "unconscientious" and "inequitable". It consists of the effort to repudiate conduct by which the other party has been induced to act. This is altogether different from saying that the conduct itself was accompanied by an actual intent to deceive. Galbraith v. Lunsford, supra; Rice v. Bunce, 49 Mo. 231, 8 Am. Rep. 129; Dezell v. Odell, 3 Hill, N. Y., 215, 38 Am. Dec. 628; Bidwell v. City of Pittsburgh, 85 Pa. 412, 27 Am. Rep. 662; and see, Church of Christ v. McDonald, 180 Tenn. 86, 171 S. W. (2d) 817, 146 A. L. R. 1173; 2 Pom. Eq. Jur., Vol. 2, Sec. 809.

The principle of this rule is that underlying all equitable estoppel. This is, that when one of two innocent persons must suffer, he shall suffer who, by his own acts, occasioned the confidence and loss. Hence, if it

could be assumed that the sale of the land in the present case were void, it is no answer to say that at the time he made the representations the complainant was unaware of his rights in general and that fact in particular, and therefore was guilty of no actual fraud in the sence that his misrepresentations were made with an actual intent to deceive.

Moreover, the representations by which the defendant was induced to act had no relation to the status of the title. They bore only upon a disclaimer of interest, not based upon any question with respect to the title. As said, the reason complainant assigned for having abandoned interest in the property was that it was not worth the amount of the delinquent assessments, for which it was liable. If this were true, and the defendant had a right to assume that it was, then it applied with equal force, whether the order of sale was valid or invalid; for in either event complainant had no right to suppose that he could regain the land without paying the delinquent assessments plus interest and penalty, or the amount of the price which had been paid for its purchase. In other words, if the sale was valid he could regain the land only by redeeming it upon payment of the price paid for it by the purchaser, plus interest and the further sum of 10% as required by Code Section 4362; and if it was invalid, he must be held to have known that upon setting it aside a court of equity would require that he reimburse the purchaser for the amount he was out; and that in either event he would be liable for any assessments falling due in the future. Strother v. Rilley, 105 Tenn. 48, 58 S. W. 332, and cases cited; Caldwell v. Palmer, 6 Lea 652, 655; Gibson's Suits in Chancery, Sec. 39.

Nor does it avail the complainant anything that the defect in the title to the land, if any, was a matter of record equally accessible to both parties. In the first place, the rule is, says Mr. Pomeroy, "if the real owner resorts to any affirmative acts or words or makes any representation, it would be in the highest degree inequitable to permit him to say that the other party, who had relied upon his conduct and had been misled thereby might have ascertained the falsity of his representations". 2 Pomeroy, Sec. 810.

In the second place, as above said, the estoppel in the present case does not rest upon representations with respect to the validity of the title, but upon representations inducing the defendant to believe that the complainant had abondoned any interest he had in the land and would lay no claim thereto, made at a time when he could have redeemed the property.

The result is the decree is reversed and the bill dismissed at the cost of the complainant.

Baptist and Ketchum, JJ., concur.