## COOPER v. LITTLE.—201 S. W. (2d) 210.

Western Section. November 29, 1946.

Petition for Certiorari denied by Supreme Court, February 3, 1947.

686

J. W. Rankin of Martin, for Cooper. William C. Tipton, of Covington, Moss & Benton, of Jackson, and Holmes & Holmes, of Trenton, for Little.

KETCHUM, J. This is an ejectment suit brought by Cooper to recover a tract of 26 acres of land which was sold in a proceeding filed in the chancery court of Obion County to enforce the lien of drainage assessments due the Rutherford Fork Drainage District No. 4, and which was purchased at said sale by the defendant, C. H. Little. The contention of the complainant is that the suit to enforce the payment of the delinquent assessments was prosecuted by C. H. Little & Co. who held the drainage district bonds, and not by Obion County for the use of the Drainage District, and that the court was without

jurisdiction to order a sale of the property in a suit brought by the bondholder, and that such a suit could be maintained only by a receiver appointed for the purpose. The chancellor sustained this contention, held that the decree vesting the title in Little was void, and awarded a writ of possession to Cooper; and from this decree Little has appealed.

It is admitted that the Rutherford Fork Drainage District 4 was legally organized in 1914, that the assessments were levied regularly over a period of 20 years to provide funds for the payment of the bonds which were issued and sold to pay the cost of the construction and maintenance of the project. The assessments for the years 1929 to 1934, inclusive, were not paid and to enforce the payment thereof a bill was filed in the chancery court of Obion County (in which county said drainage district was created), to enforce the payment thereof, the style of the case being "Obion County for the Use and Benefit of Rutherford Fork Drainage District No. 4, and for the Use and Benefit of C. H. Little & Company, and all other bond owners, v. Carl Bradbury et al."

The complainant herein was made a party defendant in said suit, was personally served with process and suffered a pro confesso to be taken against him; his property was designated as Tract No. 16 in that proceeding and the amount of the assessments levied against it for the years 1929 to 1934, inclusive, which were delinquent, was duly certified by the county trustee; and by decree entered at the April term, 1936, the amount of delinquent assessments owing by the complainant was adjuged to be $207.57 and a sale of said tract was ordered unless said amount was paid within 30 days. In due course the clerk and master filed his report of sale, from which it ap-

peared that he had sold said tract No. 16 at public outcry to the highest bidder pursuant to said order of sale, and that C. H. Little, the defendant herein, had become the purchaser thereof at the sum of $225, which amount had been paid in cash; this report was confirmed by the court and the title to said tract was divested out of complainant herein and vested in C. H. Little; and the proceeds of the sale were ordered to be applied as provided in the drainage assessment; (1) to the payment of the pro rata share of the costs chargeable against said tract No. 16; (2) to the payment of state and county taxes on said tract then unpaid; (3) to the payment of attorney's fee as adjudged; and (4) the balance to the trustee of Obion County to be applied on the delinquent assessments on said tract No. 16.

This decree vesting the title to said tract in defendant Little was entered on April 3, 1940; and the present suit seeking to set aside said sale as void was filed on August 17, 1945.

The grounds upon which complainant relies to set aside said sale are (1) that D. J. Caldwell, Esq., the solicitor who filed the bill to enforce the payment of the delinquent drainage assessments was not authorized by the directors of the drainage district to file said suit; and (2) that the order pro confesso entered against the complainant herein in said suit, and the decree divesting the title to said tract 16 out of him and vesting it in the defendant Little, was void, "because Obion County had no authority to file the suit in the cause of Obion County for the use and benefit of Rutherford Fork Drainage District No. 4 of Obion County, and for the use and benefit of C. H. Little, bondholder, and the other bondholders."

690

■ ■ The first of these contentions is apparently abandoned as it is not relied upon in the brief. At any rate the point is raised too late in a collateral proceeding after the solicitor filing the suit has prosecuted it to a successful conclusion as in the present case.

■ The authority of an attorney to appear for his client can be challenged only in the suit in which he appears, and then the question must be raised in limine by a rule upon the attorney to show his authority. The defense comes too late after demurrer or answer filed. Gibson's Chancery, sec. 233; 7 C. J. S., Attorney and Client, sec. 74, pp. 882-885; 5 Am. Jur. 306-309. The question cannot be raised in a subsequent suit in a collateral attack upon a decree recovered by the attorney in the former litigation. The principle was applied in the case of Lawhorn v. Wellford, 179 Tenn. 625, 630, 168 S. W. (2d) 790, 792, 799.

In that case John Lawhorn who sued as agent for the First National Bank as executor of the will of Leonard Lawhorn, deceased, recovered a judgment by default against the defendant Wellford. In a subsequent suit in equity brought to subject Wellford's equitable interest in real estate to the satisfaction of said judgment, the defense was made that the First National Bank as such executor was without legal authority to appoint an agent to sue for, and take judgment in his name, as such agent, and that therefore the judgment sued on was void. The court held that the defense came too late and that it could have been raised only by preliminary rule promptly made. It was said: "The right to make the question would have been waived by answer filed. Certainly the right to make such question must be regarded as waived when no defense whatever was interposed,

final judgment permitted, and the question is sought to be raised in a collateral attack on that judgment.''

■ Nor do we think that the court was without jurisdiction to enforce the payment of delinquent assessments in the suit brought by Obion County for the use and benefit of the drainage district as was done in the Bradbury case. It is true that the bill in its caption is styled as above set out, and in the body of the bill it is averred that C. H. Little & Company were the owners of certain bonds; that the suit was brought for their use and benefit as well as for the use of the drainage district; and there was a prayer that the purchaser at the sale be allowed to surrender to the clerk and master past due bonds and coupons of the district in payment of the purchase price of the lands sold; but the fact remains that the bill was filed and prosecuted to a conclusion as a suit for the benefit of the drainage district in the manner provided by sec. 4355 et seq. of the code, and not as a suit for the benefit of the bondholders in the manner provided by secs. 4369, 4370. The procedure in the two classes of cases is entirely different.

In a drainage district suit the statute provides that the suit shall be filed in the chancery court of the county in which the land lies, in the name of the county for the use of the drainage district; that the suit may be brought after the assessments have been delinquent for sixty days, that the county trustee shall furnish a list of the lands upon which the assessments are delinquent, the names of the owners, the amount of the assessments, etc., and certify to the correctness of said list; and that on the trial the certified list shall be prima facie proof of the facts so certified, and sufficient to authorize a sale in the absence of rebutting proof; that the suit shall be heard as other suits in the chancery, except that the

court may hear the case as to any one or more of the defendants, and prosecute it to a sale and final decree as to such defendants, though the case is not ready to be heard and disposed of as to the other defendants; that when a sale is ordered the clerk and master shall ascertain and report the amount of any unpaid state, county or city taxes, and that such taxes shall be paid out of the proceeds of the sale before the delinquent assessments are paid; and that the sale shall be for cash subject to the right of redemption as provided in the statute.

On the other hand, it is provided by the statute (code secs. 4369, 4370) that after the bonds and coupons of the district have been delinquent for more than two years and after the bondholder has made demand for payment at the place designated for payment in the bonds, and has also made demand of the chairman of the board of directors of the district, the bondholder shall have the right to apply to any court of competent jurisdiction for the appointment of a receiver, and it will be the duty of the court to appoint a receiver in such a case, and the receiver shall then have the right to institute the suit for the collection of the delinquent assessments, and to have the lien on the lands enforced by a sale of the lands and apply the proceeds of the sale to the payment in full or ratably to the payment of the delinquent bonds.

In the Bradbury case the procedure as above outlined for the enforcement of liens by the county for the use of the drainage district was strictly followed; the bill was filed by the county for the use and benefit of the drainage district (as well as for the benefit of the bondholders), more than sixty days, but less than two years, after the last assessment (1934) became delinquent; the certified list of the county trustee showing the names of the delinquent owners, the amount of the assessments,

and the description of the lands was exhibited with the bill; there was the usual decree for the sale for cash; the report of the sale showing the payment of the purchase money in cash, and the amount of the unpaid state and county taxes; the decree confirming the sale and vesting the title in the purchaser subject to the right of redemption and directing the distribution of the fund; and finally the report of the clerk and master showing the distribution of the fund as directed.

The entire proceeding was in strict accordance with the statute relating to suits brought for the benefit of the drainage district. On the other hand, none of the jurisdictional requirements for the bringing of a suit for the benefit of the bondholders were complied with. For instance the suit was brought within two years after the last assessment (1934) became delinquent; there was no averment in the bill that demand had ever been made for the payment of the bonds at the place where they were payable on their face; or that demand had been made of the chairman of the board of directors of the drainage district; or any averment that a receiver had been appointed, and the suit was not instituted by a receiver. None of the averments necessary to give the court jurisdiction of a bondholder's suit were made; and there is nothing in the decree for sale, or in the other decrees entered in the cause, to indicate that the court construed the suit as one prosecuted for the benefit of the bondholders.

Obion County was without authority to maintain a suit for the benefit of the bondholders, because under the provision of secs. 4369, 4370 of the code such suits must be brought by a receiver appointed for the purpose. See Madison County, for Use, etc., v. Crooms 202

694

S. W. (2d) 975, opinion by Justice Neil at Jackson, April term, 1942.

 It thus affirmatively appears that the court had jurisdiction of the Bradbury suit as a suit brought by the county for the use of the drainage district, and that it was without jurisdiction of it as a suit brought by the county for the use of the bondholders. Although there was no motion to strike that part of the caption and body of the bill that indicated that the bill was filed by the county for the benefit of the bondholders those parts of the bill may be disregarded as surplusage as they added nothing to the bill, because the court was without jurisdiction to maintain a suit for the benefit of the bondholders.

 On a collateral attack upon a judgment of a court of general jurisdiction here is a conclusive presumption in favor of the validity of the judgment attacked in the absence of an affirmative showing of a lack of jurisdiction, either of the subject matter or of the parties. See Wilkins v. McCorkle, 112 Tenn. 688, 707, 708, 80 S. W. 834, 838, where it is said: "On collateral attack upon a judgment or decree of a court of general jurisdiction by parties or privies thereto, the rule is that such judgment or decree cannot be questioned except for want of authority over the matters adjucated upon; and this want of authority must be found in the record itself. In the absence of anything in the record to impeach the right of such a court to determine the question involved, there is a conclusive presumption that it had such right. Reinhardt v. Nealis, 101 Tenn. 169, 172, 173, 46 S. W. 446. This rule presupposes, of course, that the court has acquired jurisdiction of the persons appearing to be parties to the cause. This fact must also be determined from the face of the record, and in conducting such examination every reas-

onable presumption will indulged in favor of the jurisdiction. Robertson v. Winchester, 85 Tenn. 171, 183-186 1 S. W. 781; Hopper v. Fisher, 2 Head 253, 254. The evidence on which the court acted cannot. be looked to. If the bill or other pleading make a case, and the court in its judgment or decree assume the case to have been established, that is sufficient. Kindell v. Titus, 9 Heisk. 727; Pope v. Harrison, 16 Lea 82.''

■ As we have pointed out the chancery court is not only a court of general jurisdiction, but also by the express terms of the statute it is given exclusive jurisdiction of suits brought by the county for the use of the drainage district to enforce the lien of drainage assessment. Code secs. 4355, 4356. And it affirmatively appears from the order pro confesso that the defendant Cooper, the complainant herein, was personally served with process.

The bill in the Bradbury case, in its caption, purports to have been filed by the county for the use and benefit of both the drainage district and the bondholders. It affirmatively appears from the face of the record that the court was without jurisdiction of the suit as one for the use and benefit of the bondholders, but that it did have jurisdiction of it as one for the benefit of the drainage district.

■■ In view of the presumption in favor of the validity of the decree, if it appears from the face of the record that in one aspect of the bill it can be upheld as a valid decree, but that in the other it is void, then that view of the bill upon which the decree can be sustained as valid will be adopted. Theoretically, at least, the chancellor is presumed to have known that he was without jurisdiction to sustain the bill as one for the benefit of the bondholders, but that he did have jurisdiction to

sustain it as one for the benefit of the drainage district. And since he proceeded with the suit to a final decree, in the absence of any showing to the contrary from the face of the record, it will be presumed that he did what he had authority to do, and sustained the bill as one for the use and benefit of the drainage district. And this presumption is strengthened by the fact that he did not render any decree in favor of the bondholders, or adjudge the amount due them, or direct that the proceeds of the sale be paid to them but did direct that they be paid to the county trustee as is customary in suits for the benefits of drainage districts.

The chancellor's finding of fact that ''C. H. Little & Company became the owners of certain of the bonds and . . . filed a bill in this court for the purpose of enforcing the liens on the various tracts of land securing said bonds'' was based upon evidence heard in the present case and not upon the face of the record in the former suit. In passing upon the validity of the former decree he was authorized to look only at the face of the record, —the pleadings and decrees,—and could not consider outside evidence. In Kindell v. Titus, 56 Tenn. 727, it was held that the facts as stated in the bill and the decree alone can be looked to to test the jurisdiction, and that judgments and decrees which are not void on the face of the proceedings are valid in every other court when brought into question collaterally. The court said: ''We hold, then, the true principle to be that where the petition or bill alleges all the facts required by the Statute, in order to sell the land; and the decree states these facts to have been made out to the satisfaction of the court, and assumes them as the basis and the ground on which the court orders the sale; that then in a collateral proceeding, seeking to attack the sale, for the want of juris-

diction to make it, the evidence on which the court acted cannot be looked to—nor can the correctness of the conclusion, at which the court arrived from the evidence, be investigated by another inferior Court, in order to declare the decree thus made, valid or void. The case made in the pleadings, i.e., the bill or petition, and the decrees of the Court—*alone* can be looked to, to test the jurisdiction. We think this the only sound principle that can govern in such cases.''

In Crocker v. Balch, 104 Tenn. 6, 55 S. W. 307, there was a collateral attack upon a decree of the county court in an adoption proceeding. The court said: ''The provisions of the (adoption) statute, supra, as well as others on the same subject, make the county court one of general jurisdiction over matters pertaining to the adoption and legitimating of children. It has been held that the decree of such court of general jurisdiction cannot be collaterally questioned, except for the want of authority over the matter adjudicated, and in such case the record must show affirmatively such want of authority. In the absence of anything in the record impeaching the right of such court to determine the question involved, there is a conclusive presumption that it had such right.'' Citing cases.

The complainant, appellee here, relies upon the case of Madison County, for the Use of Drainage District, etc., v. Crooms, supra, as authority to sustain his contention that the sale in the Bradbury case was void. Since that case has not been reported it is proper that we make a rather full statement of the findings and holding of the court in so far as we think it is applicable to the present case.

The bill was filed by Madison County for the benefit of the drainage district in March, 1920. In 1927 and 1934 the first and second amended and supplemental bills were filed to enforce the payment of subsequently accruing delinquent assessments. In September, 1938, the Tennessee Securities Company, the holder of the outstanding bonds of the district filed its intervening petition asking to be made a party complainant and to have a receiver appointed, and an order was entered making it a party complainant to the cause "with power to prosecute the same in the name of Madison County for its own use and benefit, and to take advantage of all process, pleadings, orders, judgments and decrees heretofore rendered herein"; and in the same order a receiver was appointed upon its application. In November, 1938, a third amended and supplemental bill was filed by the county suing for the use of the Tennessee Securities Company, and by the receiver, setting out in detail the history of the former proceedings and asking for a sale of the property for the benefit of the Securities Company, the bondholder. The defendants first moved to dismiss, and later demurred, to this amended and supplemental bill upon numerous grounds, and especially upon the grounds of laches and the statutes of limitations, and they especially challenged the right of the county to maintian the suit for the benefit of the bondholder, and the right of the receiver to sue. The chancellor dismissed the original bill and the first and second supplemental bills, and treated the third amended and supplemental bill as an original bill and held that the county could maintain the action for the benefit of the Securities Company, and that the receiver had the right

to sue to enforce the lien. On the appeal to the supreme court it was held that all the proceedings had prior to the appointment of the receiver were void, that the county had no right to maintain the suit for the benefit of the Securities Company; that the Securities Company had no right to sue in its own name; that it had a right to have the receiver appointed, and that the receiver alone had the right to maintain the action for the benefit of the bondholder under the provisions of Secs. 4369 and 4370 of the code; citing Fayette County, for Use of Loosahatchie Drainage District et al. v. Graham et al., 178 Tenn. 54, 156 S. W. (2d) 379, and State et al. v. Wilson et al., 179 Tenn. 54, 162 S. W. (2d) 510. The decree of the chancellor was accordingly reversed and the cause remanded for further proceedings and especially with the right to the defendants to rely upon their defenses of laches, the statute of limitations, etc.

This case definitely establishes (1) that the county had no right to maintain the suit for the benefit of the bondholder; (2) that the bondholder could not maintain the action in its own name; and (3) that the receiver alone could maintain the action for the benefit of the bondholder. The bill had been dismissed in so far as it was brought by the county for the use of the drainage district before the hearing on the third amended and supplemental bill which was treated as the original bill. That bill was brought by the county for the use of the bondholder, and by the bondholder itself, and by the receiver, so the question we have was not before the supreme court on that appeal.

As we view the record, although the Bradbury case purported to have been brought by the county for the benefit of the drainage district and also for the benefit of the bondholders, it had no right to sue for the ben-

efit of the bondholders, and the suit was really tried as a suit by the county for the benefit of the drainage district under the provisions of Sec. 4355 et seq. of the code, and not as a suit for the benefit of the bondholders under Secs. 4369, 4370. We therefore hold that the sale to Little in this case was a valid sale.

In addition to the defense that the sale to Little was valid and that the decree in the Bradbury case was conclusive upon complainant, the defendant pleads and relies upon the following additional defenses as a bar to his action in the present case, even if it should be conceded that the sale in the Bradbury case was void, namely:

(1) The defense of res adjudicata because the complainant might have pled and relied upon the same defenses in the Bradbury case that he now relies upon as authority to sustain the present suit.

(2) The defense of laches in that complainant waited more than five years after the title to the property was vested in defendant, and until the statutes of limitations of six and ten years, Code 1932, Secs. 8600, 8590, had run against the delinquent assessments, before he filed the present suit attacking the sale.

(3) The defense of estoppel in that he stood by and permitted his land to be sold and the proceeds of the sale applied to extinguish admitted liens against it; and thus having received the benefit of its full value, he will not now be heard to say that the sale was void or that he was prejudiced thereby.

(4) That having come into a court of equity seeking relief he will be required to do equity by refunding to the defendant the amount paid into court by him and applied to the satisfaction of valid assessment liens on his prop-

erty. Strother v. Reilly, 105 Tenn. 48, 58 S. W. 332; Caldwell v. Palmer, 74 Tenn. 652, 654.

Having reached the conclusion that the sale to Little was a valid sale, we deem it unnecessary to discuss the merits of these defenses; but we do not wish to be understood as holding that they are without merit. On the contrary, we are of opinion that there is much to be said in support of them.

Our conclusion is that the chancellor was in error in decreeing that the Bradbury suit was brought and prosecuted to a conclusion by C. H. Little & Company for their own use and benefit without authority from the drainage district, and that neither Obion County nor the drainage district were parties to the suit, and that therefore the sale to C. H. Little was void. We accordingly reverse the chancellor's decree and dismiss the complainant's bill. The costs of the cause will be adjudged against the complainant and his surety on the cost bond.

Anderson, P. J., and Baptist, J., concur.