**DIXIE SAVINGS STORES, INC.,**
**Plaintiff/Appellant,**

**v.**

**Paul W. TURNER and Nancy R. Ables,**
**Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 12, 1988.

Permission to Appeal Denied by
Supreme Court Dec. 5, 1988.

Bates W. Bryan, Alvin Y. Bell, Chattanooga, for plaintiff/appellant.

William C. Killian, Jasper, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves a collateral attack on the validity of a 1981 judgment of the Chancery Court for Hamilton County. The validity issue arose when the judgment creditor filed an action in the Chancery Court for Marion County seeking to enforce the judgment. Following a bench trial, the trial court determined that the Hamilton County judgment was void and ordered the release of the lien lis pendens. The judgment creditor has appealed, insisting that the Hamilton County judgment is valid. We agree and, therefore, reverse the trial court's decision.

### I.

Paul W. Turner operated a grocery store in South Pittsburg called Paul's Food Market. Sometime in the late 1950's, he became a member of Dixie Savings Stores, Inc. ("Dixie Savings"), a food distribution center located in Chattanooga. As a member, Mr. Turner agreed to pay for all purchases within seven days from the date of purchase. The parties had a long, apparently satisfactory, relationship, and for a

period of time, Mr. Turner served on Dixie Savings' board of directors.

Many of Mr. Turner's checks were returned unpaid, and, by 1979, the Paul's Food Market account was seriously delinquent. As a result, Dixie Savings turned the account over to its lawyer, Bates W. Bryan, Sr. On March 4, 1981, Dixie Savings filed an action in the Chancery Court for Hamilton County against Mr. Turner personally seeking payment of the account.

Mr. Turner and Mr. Bryan had several telephone conversations about the delinquent account after the suit was filed. On May 5, 1981, Mr. Turner, in his capacity as president of Paul's Food Market, Inc., signed an agreement stating that he would pay $2,000 on the account by May 7, 1981 and would then pay $500 each month until the debt was paid. He also agreed to purchase a $25,000 life insurance policy and to assign it to Dixie Savings as collateral.

On September 2, 1981, the Chancery Court for Hamilton County entered an order in the pending lawsuit, giving Dixie Savings a $61,291.91 judgment against Mr. Turner and Paul's Food Market, Inc. Mr. Bryan signed the order on behalf of Dixie Savings, and Mr. Turner signed the order for himself and on behalf of Paul's Food Market, Inc. The order recited that Paul's Food Market, Inc. had agreed to become a party to the case. It also provided that execution of the judgment would be stayed as long as Mr. Turner continued to make the $500 monthly payments and to pay the premiums on the insurance policies in a timely manner.

Mr. Turner did not keep up the required payments. In September, 1983, Dixie Savings filed suit in the Chancery Court for Marion County seeking the court-ordered sale of a parcel of real property in Marion County owned by Mr. Turner. Mr. Turner denied owning the property. He also attacked the validity of the prior Hamilton County judgment on the grounds that "certain facts were misrepresented to him by counsel for the plaintiff" and that "the proper venue of said action was in Marion County."

A short trial was conducted in March, 1985. At the beginning of the trial, Mr. Turner's counsel asserted two defenses for the first time: accord and satisfaction and the Chancery Court's lack of personal jurisdiction over Mr. Turner when the 1981 judgement was entered. The trial court filed a memorandum opinion on August 31, 1985, stating that "[t]he thing that strikes the court as proper and just is to declare the Hamilton County Chancery Court Judgment void for want of the jurisdiction over the person of the defendant and thereby allow the plaintiff to proceed in a new suit to collect its debt against the proper person."

II.

The Personal Jurisdiction Issue

The trial court's decision to invalidate the 1981 judgment against Mr. Turner rests solely on its determination that the Chancery Court for Hamilton County did not have personal jurisdiction over Mr. Turner. Contrary to the trial court's finding, the record of the 1981 proceedings in Hamilton County indicates that Mr. Turner entered a voluntary, general appearance in the case.

Dixie Savings filed suit against Mr. Turner on March 4, 1981 in the Chancery Court for Hamilton County. The summons was served on Mr. Turner on April 27, 1981 at his grocery store in South Pittsburg. On September 2, 1981, the Chancery Court for Hamilton County entered an order granting Dixie Savings a judgment against Mr. Turner and Paul's Food Market, Inc. The order bore Mr. Turner's signature in two places indicating that he had "approved" the judgment on his own behalf and on behalf of Paul's Food Market, Inc.

■ Collateral attack upon a judgment rendered by a court of general jurisdiction is not permissible unless the judgment is void on its face. *Turner v. Bell*, 198 Tenn. 232, 242, 279 S.W.2d 71, 75, *cert. denied*, 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751 (1955); *Edwards v. Puckett*, 196 Tenn. 560, 568, 268 S.W.2d 582, 586 (1954); *Giles v. State ex rel. Giles*, 191 Tenn. 538, 545, 235 S.W.2d 24, 28 (1950). When collaterally

attacked, the judgment of a court of general jurisdiction enjoys a presumption of validity unless the record affirmatively shows a lack of personal jurisdiction. *State ex rel. Folds v. Hunt,* 216 Tenn. 195, 201–02, 391 S.W.2d 629, 632 (1965); *Page v. Turcott,* 179 Tenn. 491, 503, 167 S.W.2d 350, 354 (1943); *Cooper v. Little,* 29 Tenn.App. 685, 694–95, 201 S.W.2d 210, 214 (1946). The presumption is conclusive unless impeached by the record itself. *State ex rel. Folds v. Hunt,* 216 Tenn. 195, 201–02, 391 S.W.2d 629, 632 (1965); *State ex rel. Kuntz v. Bomar,* 214 Tenn. 500, 504, 381 S.W.2d 290, 291 (1964).

■ A party's objections to personal jurisdiction and venue are deemed waived unless they are raised in a timely manner. *Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn. 1977) (venue); *Felty v. Chillicothe Realty Co.,* 175 Tenn. 315, 318, 134 S.W.2d 153, 154 (1939) (personal jurisdiction). Thus, if a party makes a general appearance and does not take issue with venue, adequacy of service of process, personal jurisdiction, or other similar matters, the courts customarily find that the party has waived its objections to these matters. *Tennessee Dep't. of Human Serv's v. Daniel,* 659 S.W.2d 625, 626 (Tenn.Ct.App.1983) (personal jurisdiction); *Walkup v. Covington,* 18 Tenn.App. 117, 126, 73 S.W.2d 718, 723–24 (1933) (defect in process).

The Tennessee Rules of Civil Procedure do not define a general appearance. *Patterson v. Rockwell Int'l,* 665 S.W.2d 96, 99 (Tenn.1984). However, all appearances are deemed to be general appearances unless the contrary appears. *Akers v. Gillentine,* 33 Tenn.App. 212, 221, 231 S.W.2d 372, 376 (1950).

General appearances consist of acts from which it can reasonably be inferred that the party recognizes and submits itself to the jurisdiction of the court. *Patterson v. Rockwell Int'l,* 665 S.W.2d at 99–100; H. Gibson, *Gibson's Suits in Chancery* § 146 (6th ed. 1982). This Court has found that "the making of any agreement with the complainant or his solicitor, relating to the proceeding in the cause" amounts to a general appearance. *Akers v. Gillentine,* 33 Tenn.App. at 221, 231 S.W.2d at 376. Thus, a party's consent to the entry of a judgment against it constitutes a general appearance. *See Byron v. Concord Nat'l Bank,* 299 Mass. 438, 13 N.E.2d 13, 15 (1938).

Personal jurisdiction is obtained by service of process or by a party's voluntary appearance in a case. *Cooper v. Reynolds,* 77 U.S. (10 Wall.) 308, 316–17, 19 L.Ed. 931 (1870); *Overby v. Overby,* 224 Tenn. 523, 525–26, 457 S.W.2d 851, 852 (1970); *see J.C. Jacobs Banking Co. v. Security Banking Co.,* 6 Tenn.Civ.App. 127, 140–41 (1915). A recital in a judgment that process was served on the defendant or that the defendant entered an appearance is conclusive when the judgment is collaterally attacked unless the record contradicts the recital. *Harris v. McClanahan,* 79 Tenn. 181, 185 (1883).

■ Mr. Turner's approval of the 1981 judgment against him, evidenced by his signature on the judgment order, constitutes both a voluntary appearance and a general appearance. By approving the order, Mr. Turner submitted himself to the court's jurisdiction and implicitly recognized that there was a case against him in court. Nothing on the face of the Hamilton County records contradicts these conclusions. Therefore, the trial court erred when it determined that the Chancery Court for Hamilton County did not have personal jurisdiction over Mr. Turner when the 1981 judgment was entered.

### III.

### Misrepresentation by Plaintiff's Counsel

Mr. Turner also asserts that he was induced to sign the 1981 decree by the misrepresentations of Dixie Savings' counsel. The trial court did not address this issue directly. However, we take it up because the allegations of misconduct by a member of the bar cast a cloud over the integrity of the judicial process. *See Smith v. Harrison,* 49 Tenn. (2 Heisk.) 230, 242–43 (1870).

Tenn.R.Civ.P. 9.02 requires that allegations of fraud be pleaded with specificity. Parties alleging the existence of fraud have

the burden of proving it, *Hartman v. Spivey,* 22 Tenn.App. 435, 442, 123 S.W.2d 1110, 1114 (1938), and, in independent actions to set aside a judgment based on fraud, the proof is limited to evidence of extrinsic fraud. *Brown v. Raines,* 611 S.W.2d 594, 597 (Tenn.Ct.App.1980). Extrinsic fraud is conduct by a party or its counsel intended to deceive their adversary and includes

> inducing the opposite party by false representations to him or his attorney to stay away from court, or keeping him in ignorance of the suit, or fraudulent conduct of counsel for the successful party whereby the opposite party is deceived.

*Thomas v. Dockery,* 33 Tenn.App. 695, 702, 232 S.W.2d 594, 598 (1950).

■ Mr. Turner alleged in his answer that "counsel represented to the defendant that he would not need an attorney and failed to explain to the defendant that he was signing a personal obligation or a corporation debt for which he would not be personally liable." He testified at trial that

> Well, you [Dixie Savings' lawyer] weren't, say, threatening. You put it in a very polite way that I had to sign this or else, that I've got to go. And I want to take time to go consult an attorney.
>
> And you said, "No, I don't have the time. You've got this to sign and this will be all right if you go ahead and sign this document."

The lawyer representing Dixie Savings stated to the trial court that

> I don't recall ever telling him that he didn't need a lawyer. I've never told anybody that ever since I've been practicing law, that they don't need a lawyer.
>
> He told me he knew plenty of lawyers. And I said that's good, call any one of them if he felt like it. But there was no persuasion or any other thing on my part to force Mr. Turner to sign that agreement.

While noting that Mr. Turner said he signed the agreed judgment "thinking it was for the corporation," the trial court did not attempt to resolve the conflicting testimony and made no specific determination concerning the credibility of the witnesses.

Mr. Turner did not deny that he had been served with process in April, 1981 and offered no explanation why he did not consult a lawyer during the four months before judgment was rendered against him in Hamilton County. He neither alleged nor proved that counsel for Dixie Savings misrepresented the legal effect of the order that he signed.

The order, on its face, clearly differentiates between Mr. Turner's personal liability and that of Paul's Food Market, Inc. No reasonable person reading the order could avoid the conclusion that it awarded a judgment against Mr. Turner individually. Therefore, we find that Mr. Turner has not carried his burden of proving that the 1981 judgment of the Chancery Court for Hamilton County was procured by Dixie Savings' counsel by false representations or fraud.

### IV.

The appellees' brief also alludes to an issue concerning the propriety of allowing a lien lis pendens against their property. The brief contains no argument or discussion concerning the issue; therefore, we will not consider it. *In re Estate of Espey,* 729 S.W.2d 99, 103 (Tenn.Ct.App.1986); *Painter v. Toyo Koqyo of Japan,* 682 S.W.2d 944, 951 (Tenn.Ct.App.1984); Tenn. R.App.P. 27.

### V.

The judgment of the trial court is reversed and remanded for further proceedings. The costs of the appeal are taxed to Paul W. Turner for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.