IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 19, 2004 Session

## KAY GILLIAM DULIN v. MICHAEL JAY DULIN

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 160153-6     The Honorable George H. Brown, Jr., Judge**

_____

**No. W2002-02758-COA-R3-CV - Filed June 3, 2004**

_____

Father of minor child appeals the trial court's order finding him in contempt of court, assessing arrearages of child support and attorney fees on the ground that the court lacked personal jurisdiction in the original divorce action and all subsequent proceedings. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Michael J. Dulin, Pro Se

S. Denise McCrary and Stephanie M. Micheel of Memphis for Appellee, Kay Gilliam Dulin

### OPINION

The parties are before this Court for a second time.[1] Appellee Kay Gilliam Dulin ("Mother"), filed a complaint for divorce against the appellant, Michael Jay Dulin ("Father"), in August 1998 on grounds of irreconcilable differences. The parties were declared divorced by a final decree dated December 9, 1998. The court's final decree of divorce incorporated a Marital Dissolution Agreement detailing, _inter alia_, Father's child support obligations to Mother and the parties' agreed upon custody arrangement.

---

[1] This Court's previous opinion is _Dulin v. Dulin_, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003).

On April 16, 2002, the trial court entered an "Order on Child Support and Contempt" on Mother's petition for civil and criminal contempt against Father.[2] The court found that Father owed $13,932.11 in child support arrearages to Mother, reduced this amount to judgment, and sentenced Father to three days in jail for willful contempt based upon his failure to pay child support as ordered by the court. The court suspended all but eight hours of Father's sentence, with the understanding that Father would return to the court within one month to report progress made with regard to securing regular, full-time employment, and payment of his child support obligation. The court's order further awarded Mother $1,500.00 in attorney's fees.

Shortly thereafter, Mother apparently filed another petition for civil and criminal contempt against Father for continued failure to pay child support.[3] A hearing on this petition was held on May 31, 2002. Father did not appear at the hearing, and on June 3, 2002, the court entered an order directing the issuance of an Attachment Pro Corpus for Father for his failure to appear in court as commanded by the court in its order of April 16, 2002. The court's order reduced Mother's award for $1,500.00 in attorney's fees to judgment and awarded Mother an additional judgment against Father in the amount of $958.00, representing child support arrearages for the months of April and May of 2002. The court's order further approved Mother's proposed Permanent Parenting Plan and reserved the issues of contempt, attorney's fees for the March 31, 2002 hearing, and sentencing for later review.

The court filed three more orders for Attachment Pro Corpus over the next three months for Father's failure to appear as directed. On October 4, 2002, Father filed a "Notice of Lack of Personal Jurisdiction" in the trial court, specifically alleging that Mother failed to comply with Tenn. R. Civ. P. 4.01 and 4.02 governing issuance and service of a complaint and summons. Father thereby moved the court "to dismiss this charge of contempt on grounds that it arises from a void judgment."

This same day, a hearing was held upon the court's August 29, 2002 order for Attachment Pro Corpus directing Father to appear before the court on October 4, 2002 at 10:00 A.M. By "Order on Appearance on Attachment Pro Corpus" entered October 9, 2002, the court again found Father in willful contempt for failure to appear in court as directed, and sentenced him to confinement in the Shelby County Correctional Center for three days.

A hearing was held in the trial court on October 11, 2002 "upon [Mother's] Petition for Civil and Criminal Contempt,[4] ... this Court's numerous Attachments Pro Corpus, statement of counsel ..., testimony and statements of [Father], pro se, and the entire record in this cause...." At the hearing, Father briefly raised/addressed his claim that the trial court lacked personal jurisdiction over him, and ultimately agreed to make payment toward his child support obligations so as to avoid further imprisonment. On October 16, 2002, the trial court entered an order which states:

---

[2] Mother's petition was not included as a part of the record on appeal.

[3] This petition was not included as a part of the record on appeal.

[4] Mother's petition was not included as part of the record on appeal.

1. That Father is in arrears to [Mother] for child support, attorney's fees, discretionary costs and other judgments, which said judgments are hereby reaffirmed in the amount of $37,890.11.

2. Further, Father has willfully refused to pay child support in the amount of $479.00 per month for months of June, July, August, September and October and is therefore in willful contempt of this Court's order, and Mother shall be awarded an additional judgment in the amount of $2,395.00 for said months.

3. That Mother's attorney ... shall be awarded an attorney's fee of $4,715.00 for the May 31, 2002 hearing; June 7, 2002 court appearance; June 21, 2002 court appearance; July 19, 2002 court appearance; August 30, 2002 court appearance; October 4, 2002 ...

It is apparent from the above excerpt that the order included in the record is incomplete. Comparing this order with the order shown in the appendix to Mother's brief, the remainder of the order is as follows:

court appearance and October 11, 2002 hearing.

4. That Mother is entitled to any and all bond money paid into the Criminal Court Clerk's Office by Father. Said funds shall be applied by Mother toward Father's child support arrearages or the judgment amount set forth herein. The Criminal Court Clerk is so directed to pay Plaintiff/Mother said sum.

5. That Father is sentenced to two (2) days in jail for his failure to pay child support while employed for the last two months. The two (2) day sentence shall begin at 2:00 p.m. on October 11, 2002. Father's two (2) day sentence shall be suspended conditioned upon Mother's attorney ... receiving $600 by way of cash, money order or certified funds before 2:00 p.m. on October 11, 2002 and conditioned upon ... counsel for Mother receiving a payment plan from Father as to how Father intends to pay the arrearage and judgment amounts set forth herein.

6. That Father has represented to the Court that he intends to pay his current child support in the amount of $479.00 [per month,] due and owing beginning November 2002, and that he intends to keep current and to not get further behind.

7.  That if Father, Michael J. Dulin, and counsel for Mother reach an acceptable payment plan, then a Consent Order shall be entered accordingly.  If, however, Father and counsel for Mother are unable to reach a mutually agreeable payment plan on the judgements and arrearages set forth herein, then the matter shall be set for hearing before this Honorable Court.

8.  That the issue of Criminal Contempt for Father's failure to appear on May 31, 2002 and his subsequent failures to appear for issued and served Attachments Pro Corpus are hereby reserved for hearing at a later date.

9.  That the costs of this cause are assessed against Father.[5]

On November 8, 2002, Father filed a notice of appeal of the trial court's October 16, 2002 order, and all "matters reserved from orders dated April 16, 2002, May 31, 2002, June 3, 2002, June 7, 2002, June 21, 2002, July 19, 2002, August 29, 2002, and October 9, 2002...."  Father presents the following issues for review, as stated in his brief:

I.  Did the Trial Court err in refusing to acknowledge [Father's] jurisdictional statement, [and] refusing to admit the original decree in this cause is void.

II.  Did the Trial Court err in assuming jurisdiction over [Father] and in entering orders derived from a void judgment.

We condense and restate Father's issues to whether the trial court's final decree of divorce was void on grounds that the court lacked personal jurisdiction over Father.  Mother presents the additional issue of whether she is entitled to an award of attorney's fees on appeal.

As noted, the record is incomplete.  If the record were made complete by the entire order of October 16, 2002, it would show that no final judgment has been entered.  The trial court specifically provided for a conditional-type order and then further reserved, for hearing at a later date, matters dealing with Father's contempt.  Thus, the order appealed from is not a final order appealable as of right.  *See* Tenn. R. App. P. 3.  However, our Supreme Court has ruled that, for good cause,  the requirements of Tenn. R. App. P. 3 may be suspended in a particular case.  *See **Bayberry Assoc. v. Jones***, 783 S.W.2d 553, 559 (Tenn. 1990).  In ***Rector v. Halliburton***, No. M1999-02802-COA-R3-CV, 2003 Tenn. App. LEXIS 149 (Tenn. Ct. App. Feb. 26, 2003), this Court dealt with the similar question and said:

---

[5] As noted, only a portion of the court's order was included in the technical record.  The entire order was provided by Mother in an appendix to her appellate brief.  The copy included in the appendix is stamped with an attestation from Mr. Jimmy Moore, Clerk of the Court, that the order is a true copy.

But our inquiry does not end at this point. Procedurally, this court may for good cause suspend the final judgment requirement in a particular case. *See*, ***Bayberry Assocs. v. Jones***, 783 S.W.2d 553 (Tenn. 1990); Rule 2, Tenn. R. App. P. We elect to suspend the Rule 54.02 requirement for two reasons: (1) we are able to consider the merits of all the issues on appeal excepting the amount of the punitive damages award, and (2) none of the parties will be unfairly prejudiced if all the issues are resolved and the case is remanded for a determination of the award of punitive damages. Judicial economy must intervene at some point in the progress of a lawsuit, and we accordingly suspend Rule 3(a) Tenn. R. App. P.

*Id.* at *9.

This Court elects to suspend the Tenn. R. App. P. 3 requirement of a final judgment in this case, because of the long and protracted proceedings involved in this case, this is the second appeal of the case, and the issue involved was dealt with in the first appeal. As the ***Rector*** Court said, "Judicial economy must intervene at some point in the progress of a lawsuit. . . ." *Id.*

In ***Dulin v. Dulin***, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *3 (Tenn. Ct. App. Sept. 3, 2003), this Court set forth the applicable standard of review, stating:

We review the trial court's conclusions of law "under a pure ***de novo*** standard of review, according no deference to the conclusions of law made by the lower courts." ***Kendrick v. Shoemake***, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489, at *6 (Tenn. Nov. 1, 2002) (citing ***S. Constructors, Inc. v. Loudon County Bd. of Educ.***, 58 S.W.3d 706, 710 (Tenn. 2001)). With respect to the trial court's findings of fact, our review is ***de novo*** upon the trial court's record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d).

Father specifically argues that the trial court lacked jurisdiction over his person, thereby rendering the court's final decree of divorce void, where Father did not appear before the trial court in the divorce or related proceedings, never received service of process of Mother's complaint for divorce, and at no time waived his right to proper service. We find Father's argument without merit.

This Court addressed the issue of personal jurisdiction and service of process in ***Dulin***, 2003 WL 22071454 at *10, stating:

As a final matter, Father argues that it has come [to] his attention that the final divorce decree entered in 1998 was void for reasons relating to service. We find no merit in Father's argument.

As is evident from the above-quoted finding, this Court has already considered and ruled upon Father's personal jurisdiction/service of process issue. Thus, this issue is barred by the doctrine of *res judicata*.

Further, we note that Father knowingly and voluntarily signed a Marital Dissolution Agreement containing the following waiver clause:

> **Waiver.** Husband is aware that a Complaint for Divorce has been or will be filed in the Circuit or Chancery Court of Shelby County, Tennessee on the grounds of irreconcilable differences. Husband *acknowledges that he has received a copy of said Complaint*, *admits the truth of the allegations therein*, waives his Answer, admits that irreconcilable differences exist and *consents to entry of Default Judgment and a Final Decree of Divorce*.

(emphasis added).

Tennessee Code Annotated § 36-4-103 (2001) provides that a defendant may enter into a written notarized Marital Dissolution Agreement in lieu of service of process in a divorce action premised on grounds of irreconcilable differences, stating:

> **36-4-103. Irreconcilable differences - Procedure.**
>
> (a)(1)   In all divorces sought because of irreconcilable differences between the parties, if the defendant is a nonresident, personal service may be effectuated by service upon the secretary of state pursuant to the provisions of § 20-2-215.
>
> (2) In lieu of service of process, the defendant may enter into a written notarized marital dissolution agreement with plaintiff that makes specific reference to a pending divorce by a court and docket number, or states that the defendant is aware that one will be filed in this state and that the defendant waives further service and waives filing an answer to the complaint. Such waiver of service shall be valid for a period of one hundred eighty (180) days from the date the last party signs the agreement. The agreement may include the obligation and payment of alimony, in solido or in futuro, to either of the parties, any other provision of the law notwithstanding. *The signing of such an agreement shall be in lieu of service of process*

-6-

> *for the period such waiver is valid and shall constitute a general*
> *appearance before the court and answer which shall give the court*
> *personal jurisdiction over the defendant, and constitute a default*
> *judgment for the purpose of granting a divorce on the grounds of*
> *irreconcilable differences.* (Emphasis added).

The plain language of T.C.A. § 36-4-103(a)(2) indicates that the signing of a written notarized Marital Dissolution Agreement "shall constitute a general appearance before the court and answer which shall give the court personal jurisdiction over the defendant...." There is no dispute that Father knowingly and voluntarily signed the Marital Dissolution Agreement on July 9, 1998. By affixing his signature to the agreement, Father effectively entered a general appearance before the trial court and thereby gave the court jurisdiction over his person.

We further note that Father filed several pleadings in the trial court with regard to the final decree of divorce and incorporated Marital Dissolution Agreement. On August 16, 2000, Father filed a "Petition for Injunction, Petition to Modify Joint Custody, Petition to Modify Child Support, and Petition to Oppose Relocation of Plaintiff."[6] Father's pleading specifically asked the court to modify his child support obligations and custody rights as set forth in the Marital Dissolution Agreement. This pleading did not, however, include an objection or challenge to the court's exercise of personal jurisdiction over Father, nor had one been entered at any time prior. Father's filings impliedly indicate his consent to the jurisdictional powers and grasp of the trial court.

Our conclusion that Father's argument is without merit is further supported by the fact that he waited approximately four years after the filing of Mother's complaint for divorce before raising any objection to the court's exercise of personal jurisdiction over him. In ***Wesson v. Woodworks, Inc.***, No. 02A01-9808-CV-00225, 1999 WL 188288 (Tenn. Ct. App. Apr. 6, 1999), this Court stated:

> Objections to personal jurisdiction may be waived by a party's consent or failure to object. ***Meighan v. U.S. Sprint Communications Co.***, 924 S.W.2d 632, 639 n. 4 (Tenn. 1996). Unless raised in a timely manner, a party's objections to personal jurisdiction are deemed waived. ***Dixie Sav. Stores, Inc. v. Turner***, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988). Thus, if a party makes a general appearance and does not raise the issue of personal jurisdiction, "the courts customarily find that the party has waived its objections" thereto. ***Id***. When a defendant "makes an appearance in a pending matter without attacking ***in personam*** jurisdiction, and seeks affirmative relief from the court, or acts in a manner inconsistent with the claim of absence of jurisdiction," the defendant has made a general appearance and has consented to the jurisdiction

---

[6] This pleading was not included in the technical record. A copy of the pleading was provided by Mother in an appendix to her appellate brief.

> of the court. ***Dep't of Human Servs. v. Daniel***, 659 S.W.2d 625, 626
> (Tenn. Ct. App. 1983).

***Id***. at *3.

Under the circumstances, we find that Father's failure to raise an objection to personal jurisdiction for approximately four years constitutes a waiver of such an objection.

Finally, we note that Father apparently believed the court's final decree of divorce incorporating the parties' Marital Dissolution Agreement to be valid and enforceable in light of his subsequent marriage to another woman. Father cannot be found to rely upon the court's final decree where it suits his interest of being restored to the status of an unmarried person, thereby permitting him to seek and establish future union with another woman, and now be permitted to challenge the validity of said order to avoid the apparently unpleasant reality of his past due child support obligations. Simply stated, Father wants to have his cake and eat it too. Father voluntarily entered into the Marital Dissolution Agreement and consented to the payment of monthly child support. He was aware that a complaint for divorce had been filed against him, and voluntarily consented to the entry of a default judgment against him. We therefore find Father's argument of lack of notice or lack of service of process to be disingenuous, and we refuse to allow him to avoid his financial obligations to his child on the basis of this argument. We find Father's issue to be without merit.

We next consider whether Mother is entitled to an award of attorney's fees on appeal. In light of the expenses, fees, and general inconveniences incurred by Mother as a result of Father's repeated failure to appear before the court as ordered, and his inexplicable and continued refusal to honor his support obligations to his child, we find that Mother is entitled to an award of attorney's fees on appeal. Father's desire to have the court's final decree of divorce declared void, considering the fact that he is currently married to another woman, appears to be a contrived attempt to avoid or have vacated his due and owing child support obligations. Mother's application for attorney's fees on appeal is granted and the amount will be determined on remand.

The order of the trial court is affirmed and the case is remanded for such further proceedings as may be necessary. Costs of this appeal are assessed against the appellant, Michael J. Dulin, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.