## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

**FILED**

**April 6, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **BILLY WESSON and**, | ) | Madison County Circuit Court |
| **DIANE WESSON**, | ) | No. C-98-6 and No. C-98-68 |
|  | ) |  |
| Plaintiffs/Appellees. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9808-CV-00225 |
|  | ) |  |
| **WOODWORKS, INC.**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |
|  | ) |  |
| **WOODWORKS, INC.**, | ) |  |
|  | ) |  |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) |  |
|  | ) |  |
| **LARRY CUPPLES, d/b/a CUPPLES** | ) |  |
| **CONSTRUCTION COMPANY**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |

From the Circuit Court of Madison County at Jackson.
**Honorable Whit Lafon, Judge**

**A. Russell Larson**, Jackson, Tennessee
Attorney for Appellant Woodworks, Inc.

**David A. Riddick**, HOLMES, RICH, SIGLER & RIDDICK, P.C., Jackson, Tennessee
Attorney for Appellees Billy Wesson and Diane Wesson and Appellee Larry Cupples.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Defendant Woodworks, Inc., appeals the circuit court's final judgment in the amount of $8288 which was entered in favor of Plaintiffs/Appellees Billy and Diane Wesson. We reverse the circuit court's judgment based upon our conclusion that the court erred in directing a verdict in favor of Defendant/Appellee Larry Cupples, d/b/a Cupples Construction Company, and we remand for a new trial.

The Wessons instituted these proceedings in April 1997 when they filed an action against Woodworks in the General Sessions Court of Madison County. The Wessons' complaint contained the following allegations:

> [Woodworks] sold to [the Wessons] a product that was unfit for its intended purpose. [The Wessons] seek rescission and/or revokation [sic] of sales agreement regarding the purchase of wooden flooring products from [Woodworks] and a refund of amounts paid to [Woodworks] along with any incidental or consequential damages.

Woodworks responded to the Wessons' complaint by filing a motion to dismiss contending, *inter alia*, that the general sessions court lacked jurisdiction over Woodworks because Woodworks was a Georgia corporation which did not conduct business in the state of Tennessee.

Apparently, the general sessions court denied Woodworks' motion to dismiss. The record reflects that, in January 1998 after conducting a trial, the court entered a judgment in the amount of $8288 in favor of the Wessons.

Woodworks then appealed the judgment to the Circuit Court of Madison County. When Woodworks appeared in the circuit court, however, it apparently did not renew its motion to dismiss for lack of personal jurisdiction. The technical record submitted on appeal fails to contain a written motion to dismiss except for the one filed in the general sessions court. The transcript of the trial held in circuit court likewise contains no mention of a motion to dismiss.

Moreover, the record on appeal does not contain a copy of the claim filed by Woodworks against Appellee Larry Cupples, d/b/a Cupples Construction Company. According to the Appellees' brief, however, after appealing the judgment against it to the circuit court,

Woodworks filed a separate action against Cupples in circuit court. The two actions were tried together, and the circuit court's final judgment, entered in July 1998, granted Woodworks' motion to consolidate the two cases. In essence, therefore, this lawsuit involved a claim by the Wessons against Woodworks and a third-party claim by Woodworks against Cupples. The gist of Woodworks' third-party claim was that any damages incurred by the Wessons were caused by Cupples' negligence in installing the flooring and not by any defect in the flooring itself.

At the trial held in circuit court, the Wessons testified that they purchased the subject hardwood flooring products from Woodworks in February 1995. In 1994, the Wessons had entered into a contract with Cupples for the construction of a new home. The Wessons instructed Cupples to purchase the hardwood flooring from Woodworks with funds from the Wessons' construction loan. Woodworks previously had mailed flooring samples to the Wessons. Woodworks shipped the hardwood flooring in sealed boxes to Averitt Express in Jackson. Cupples picked up the flooring, transported it to the construction site, and stored it in the dining room of the partially-constructed home for several weeks. Cupples' employees then installed the flooring in the home's foyer, dining room, and living room.

In May 1995, shortly after moving into their new home, the Wessons noticed problems with the hardwood flooring. Billy Wesson testified that the floor had a wavy pattern to it, as if the flooring had buckled. Wesson also testified that the flooring had separated in places, particularly at the corners. Diane Wesson corroborated her husband's testimony that the flooring had buckled. She testified that the wood bulged or bowed in places and sank in others. On most of the boards, the edges had risen higher than the center. She also observed that separations had appeared between the floorboards.

Larry Cupples testified that his company installed the Wessons' hardwood flooring correctly; however, Cupples acknowledged that he was not present when the actual installation was performed. In May 1995, Cupples observed that the newly-installed flooring was cupping, in that the edges of the flooring were rising while the centers stayed in place. Cupples also noticed that the flooring was separating at the joints. The problems appeared to grow worse over a period of time. Cupples had used Woodworks flooring once before and had not experienced any problems with the

product. In this case, however, Cupples believed that the problems occurred because the flooring contained an excessive amount of moisture. Cupples testified that the cupping of the wood was caused by the drying-out process. Cupples explained that the wood contracted as it dried out, thus producing the cupping effect. Cupples estimated that purchasing and installing a new floor would cost $8288.

Several months after discovering these problems, the Wessons hired home inspector Dale Catlett to examine the flooring. As part of his inspection, Catlett crawled under the house to check the crawl space for excessive moisture. Catlett confirmed that a vapor barrier had been placed underneath the house to prevent it from absorbing moisture. Catlett used a moisture meter to detect the presence of moisture under the house, and the resulting readings indicated relatively low moisture levels, between eight and ten percent. Catlett did not know what the moisture levels were in the crawl space in May 1995, but he did not believe excessive moisture had been a problem because he did not observe any mold or mildew on the floor joists under the house. In Catlett's opinion, the problems which had developed in the Wessons' flooring were caused by excessive moisture in the wood at the time of installation. Catlett explained that hardwood flooring was kiln-dried until the moisture content of the wood was as low as six or seven percent. If the wood was not properly dried, the wood would continue to shrink after installation as it lost moisture. Catlett testified that the Wessons' flooring had shrunk after installation in both width and length, thus causing the separations to appear between the boards and causing the edges of the boards to turn up. Catlett was confident that the hardwood flooring was exposed to water at some point in time, but he could not tell if it happened at the factory, during transport, or at the job site.

The only witness for Woodworks was Jim Tibbs, the owner and president of Woodworks' parent company, Georgia Flooring Distributors. Woodworks distributed the products sold to the Wessons, as well as other hardwood flooring products, but Woodworks did not manufacture the products. Tibbs examined the Wessons' flooring on the day before the circuit court trial. Contrary to the other witnesses' testimony, Tibbs testified that, in his opinion, the problems with the Wessons' flooring were caused, not by excessive moisture in the wood, but by excessive moisture in the surrounding environment at the time of installation. Tibbs testified that all three problems observed by the Wessons, the cupping, the buckling, and the separating, were caused when

the wood absorbed moisture from the environment. Tibbs explained that the cupping effect resulted when water underneath the house caused the back of the flooring to expand at a faster rate than the top or face of the flooring. According to Tibbs, this expansion of the wood also caused the flooring to eventually buckle and separate. Tibbs testified that, in previous discussions, Billy Wesson indicated that the Wessons once had moisture problems underneath the house but that Cupples had corrected the problems. Tibbs further testified that, while examining the flooring on the previous day, he detected a high moisture level with a moisture meter. Tibbs opined that, although the flooring was properly installed, the flooring should not have been installed in this environment because it contained too much moisture. Tibbs agreed that the only way to remedy the problems would be to replace the floor.

Based on the foregoing evidence, at the trial's conclusion, the circuit court directed a verdict in favor of Cupples on Woodworks' third-party claim. The jury then returned a verdict in favor of the Wessons and against Woodworks in the amount of $8288, and the circuit court entered a judgment accordingly.

On appeal, Woodworks presents the following issues for this court's review:

1. Whether or not there was jurisdiction over the Defendant, Woodworks, Inc.

2. Whether the evidence supported an implied warranty in regard to Woodworks, Inc.

3. Whether the Court was in error in directing a verdict as to Larry Cupples Construction Company.

As its first issue, Woodworks contends that the circuit court erred in finding that it had personal jurisdiction over Woodworks. We conclude that Woodworks waived this issue for purposes of appellate review by failing to raise it in the circuit court.

Objections to personal jurisdiction may be waived by a party's consent or failure to object. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 n.4 (Tenn. 1996). Unless raised in a timely manner, a party's objections to personal jurisdiction are deemed waived.

***Dixie Sav. Stores, Inc. v. Turner***, 767 S.W.2d 408, 410 (Tenn. App. 1988). Thus, if a party makes a general appearance and does not raise the issue of personal jurisdiction, "the courts customarily find that the party has waived its objections" thereto. ***Id***. When a defendant "makes an appearance in a pending matter without attacking ***in personam*** jurisdiction, and seeks affirmative relief from the court, or acts in a manner inconsistent with the claim of absence of jurisdiction," the defendant has made a general appearance and has consented to the jurisdiction of the court. ***Department of Human Servs. v. Daniel***, 659 S.W.2d 625, 626 (Tenn. App. 1983).

The record in the present case reflects that Woodworks appealed the general sessions court's judgment to the circuit court and that it appeared in the circuit court without raising the issue of the court's personal jurisdiction. We hold that, under these circumstances, Woodworks has waived the right to challenge the circuit court's jurisdiction over it.

Our conclusion that Woodworks waived this issue is supported by the general rule that a party who fails to raise an issue at the circuit court level waives its right to have the issue reviewed by this court on appeal. ***See, e.g.***, ***Dement v. Kitts***, 777 S.W.2d 33, 36 (Tenn. App. 1989). We believe that this principle applies here because, in appealing the judgment of the general sessions court, Woodworks was entitled to a trial ***de novo*** in the circuit court. ***See*** T.C.A. § 27-5-108(c) (1980). In a trial ***de novo***, the circuit court tries the lawsuit anew, as if it had originated in the circuit court. ***Simms Elec., Inc. v. Roberson Assocs.***, No. 01A01-9011-CV-00407, 1991 WL 44279, at *2 (Tenn. App. Apr. 3, 1991). The parties may assert therein the same claims and defenses that they asserted in the general sessions court. ***Clark v. Metropolitan Gov't***, 827 S.W.2d 312, 318 (Tenn. App. 1991) (Koch, J., concurring). The issues are tried as if they "had not been heard before and as if no decision had been previously rendered." ***Black's Law Dictionary*** 392 (5th ed. 1979). In our view, this procedure required Woodworks, as the appellant, to raise in the circuit court all of the issues it wanted retried by that court, including that of personal jurisdiction.

Moreover, as previously indicated, Woodworks filed a separate action against Cupples in the circuit court which later was consolidated with its appeal against the Wessons. Woodworks' action of seeking such affirmative relief in the circuit court provides additional support for our conclusion that Woodworks waived the defense of lack of personal jurisdiction. ***See, e.g.***,

***Dooley v. Dooley***, 980 S.W.2d 369, 372 (Tenn. App. 1998) (holding that defendant in action to enforce divorce decree waived personal jurisdiction defense by filing motion seeking to modify decree's support provisions); ***In re Grosfelt***, 718 S.W.2d 670, 672 (Tenn. App. 1986) (holding that defendant in paternity action waived personal jurisdiction defense by not raising defense until after he filed motion to transfer case to circuit or chancery court for jury trial on paternity issue).

We note that Woodworks still could have preserved the defense of lack of personal jurisdiction if it had timely raised this defense in the circuit court. ***See Proctor & Gamble Cellulose Co. v. Viskoza-Loznica***, 33 F. Supp. 2d 644, 662 (W.D. Tenn. 1998). A defendant does not waive the defense of lack of personal jurisdiction merely by filing a claim against a third party, provided the defendant asserts the third-party claim and the personal jurisdiction defense in the same responsive pleading. ***Id***.; ***see also Dooley v. Dooley***, 980 S.W.2d 369, 371-72 (Tenn. App. 1998) (noting that defendant who unsuccessfully raises personal jurisdiction defense has no alternative except to answer and defend or risk entry of default judgment). Here, however, Woodworks apparently filed a separate action against Cupples without renewing its motion to dismiss for lack of personal jurisdiction. Under these circumstances, Woodworks did not preserve its defense of lack of personal jurisdiction.

For several reasons, we also reject Woodworks' argument that, based upon the sealed container doctrine, the circuit court erred in submitting the Wessons' claim against Woodworks to the jury. As an initial matter, we note that the trial transcript provided to this court fails to indicate whether Woodworks moved for a directed verdict on this issue at the conclusion of the proof at trial.[1] Accordingly, we are not convinced that this issue is properly before this court for review. ***See Potter v. Tucker***, 688 S.W.2d 833, 835 (Tenn. App. 1985) (holding that, in order to preserve for appellate review issue of whether circuit court erred in failing to direct verdict in its favor, party must

---

[1]We note that the trial transcript may not contain a complete account of what transpired at trial. For example, the transcript does not contain opening or closing arguments of counsel, and it does not contain the circuit court's instructions to the jury. We remind the parties that the appellant has the duty to prepare "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." ***See*** T.R.A.P. 24(b); ***accord Nickas v. Capadalis***, 954 S.W.2d at 735, 742 (Tenn. App. 1997). As submitted to this court, the transcript contains no evidence that Woodworks either (1) renewed its motion to dismiss for lack of personal jurisdiction at any time before or during the trial or (2) moved for a directed verdict at the trial's conclusion.

present motion for directed verdict at conclusion of all proof at trial).

In any event, the proof presented at trial was not sufficient to support the application of the sealed container doctrine to this case. As codified in Tennessee, the sealed container doctrine provides that no products liability action

> shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition.

T.C.A. § 29-28-106(a) (Supp. 1994). Although the proof in this case showed that Woodworks sold the hardwood flooring in sealed containers, the proof failed to reflect that Woodworks acquired the flooring in these sealed containers such as to trigger application of the sealed container doctrine. The proof also failed to address whether Woodworks had a reasonable opportunity to inspect the flooring for defects prior to shipping it to Cupples.

We further note that, as codified in Tennessee, the sealed container doctrine does not apply to actions based upon a breach of an express or implied warranty, as defined by Tennessee's Uniform Commercial Code. *See* T.C.A. § 29-28-106(a)(1) (Supp. 1994); *see also* T.C.A. § 47-2-313 (1996) (addressing creation of express warranties); T.C.A. § 47-2-314 (1996) (addressing creation of implied warranty of merchantability); T.C.A. § 47-2-315 (1996) (addressing creation of implied warranty of fitness for particular purpose). As framed, the Wessons' complaint against Woodworks encompassed a claim for breach of implied warranty by alleging that the product purchased was unfit for its intended purpose. Moreover, in his trial testimony, Jim Tibbs acknowledged that, when it sold the flooring, Woodworks warranted that the flooring was fit for its intended purpose and that it was not defective. Accordingly, we conclude that the circuit court did not err by failing to direct a verdict in Woodworks' favor based upon the sealed container doctrine.

We agree, however, with Woodworks' assertion that the circuit court erred in directing a verdict in favor of Cupples on Woodworks' third-party claim. In ruling on Cupples'

motion for directed verdict, the circuit court was required to take the strongest legitimate view of the evidence in favor of the non-moving party, Woodworks. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). That is, the court was required to resolve any conflict in the evidence by construing it in the light most favorable to Woodworks and by discarding all countervailing evidence. *Id*. Cupples was entitled to have his motion granted only if, after assessing the evidence according to the foregoing standard, the circuit court determined that reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Id*. If it entertained any doubt as to the proper conclusions to be drawn from the evidence, the court was required to deny Cupples' motion and to submit the case to the jury. *Id*.

Applying this standard, we conclude that the circuit court erred in granting Cupples' motion for directed verdict. Contrary to the circuit court's ruling, Woodworks presented evidence from which the jury could have found that Cupples negligently installed the hardwood flooring and that this negligence caused the Wessons' damages. Specifically, Woodworks presented evidence that the problems with the Wessons' flooring were caused by excessive moisture in the Wessons' home. Jim Tibbs testified, without objection, that Plaintiff Billy Wesson once acknowledged to him that the Wessons had experienced moisture problems underneath their house in the past. According to Tibbs, Wesson indicated that he had experienced "a water problem" in the crawl space underneath the house, although Wesson insisted that the problem had been corrected. Tibbs also testified that, when he examined the flooring the day before trial, he performed a simple test with a moisture meter which revealed the presence of a high level of moisture in the house. Based upon this information, as well as his own observation of the condition of the flooring, Tibbs opined that Cupples or his employees improperly installed the flooring in an environment which contained excessive moisture. Tibbs also described how, in his opinion, this excessive moisture had caused the specific problems of which the Wessons complained.

In granting Cupples' motion for directed verdict, the circuit court appeared to focus on Tibbs' testimony whereby he acknowledged that he found nothing wrong with the installation of the floor. This testimony was elicited by the circuit court in the following exchange:

THE COURT: Let me ask you this question. Did you find

anything wrong with the actual installation?

THE WITNESS: With the actual installation?

THE COURT: Putting the wood in the floor. Did you see anything unusual about that?

THE WITNESS: Other than the fact there wasn't enough expansion, and it actually buckled up against the walls. Typically, Your Honor, part of an installation --

THE COURT: Just a minute, now. I understood you to say the buckling up was due to the water.

THE WITNESS: Due to the water.

THE COURT: Well, does the -- did the installer do -- did you see anything he did other than the fact that it was a damp place?

THE WITNESS: No. He installed wood flooring in an environment that it should not have been installed.

THE COURT: The installation itself. Let's forget the environment. Was there anything wrong with the installation?

THE WITNESS: Not a thing.

THE COURT: Not a thing. That's what I wanted. Go ahead.

Contrary to the trial court's ruling, this testimony did not entitle Cupples to a directed verdict on the issue of whether he negligently installed the hardwood flooring in the Wessons' house. This testimony merely showed that Tibbs did not observe anything wrong with the way the boards were laid when the floor was installed. In other testimony, Tibbs clearly explained that site preparation was part of the installation process and that proper site preparation, in turn, included ensuring that the environment in which the floor was being installed did not contain excessive moisture. In Tibbs' opinion, when Cupples installed the hardwood flooring in the Wessons' home, the environment contained excessive moisture. In light of this testimony, the circuit court should have permitted the jury to decide which party was to blame for the problems which developed in the Wessons' flooring.

The trial court's judgment is reversed, and this cause is remanded for a new trial. Costs of this appeal are taxed one-half to the Wessons and one-half to Cupples, for which execution may issue if necessary.

_____

FARMER, J.


_____

CRAWFORD, P.J., W.S. (Concurs)


_____

HIGHERS, J. (Concurs)