IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2006, Session

STATE OF TENNESSEE, EX REL. LELSA L. PARKS
v.
DENNIS PARKS

An Appeal from the Juvenile Court for Hardeman County
No. 03-0068     Charles Cary, Judge

No. W2005-00957-COA-R3-JV - July 19, 2006

This is an attempt to set aside a child support order. The child in question was born in February 2001. The mother of the child and the respondent signed a voluntary acknowledgment of paternity, certifying that respondent was the child's biological father. The respondent's sister obtained primary custody of the child and began to collect State benefits for the child. In September 2003, the State, on behalf of the sister, filed a petition against the respondent to set child support payments. An order was entered, setting current and back child support payments. Subsequently, the State filed a petition for contempt against the respondent for failing to make the child support payments required under the order. The respondent appeared at the contempt hearing and signed an order acknowledging being in contempt and agreeing to make support payments as provided. A week later, the respondent filed a petition to set aside the original support order, asserting that he was not served with process and that he is not the biological father of the child. The trial court permitted the respondent to undergo DNA testing, which showed that he was not the father of the child. On that basis, the trial court dismissed the case against the respondent. The State now appeals. We affirm in part and reverse in part, concluding that the respondent is not entitled to retroactive relief from the support order, but that he is entitled to prospective relief because he submitted sufficient evidence on which to rescind his voluntary acknowledgment of paternity.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is
Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General & Reporter, and Juan G. Villasenor, Assistant Attorney General, for the appellant, State of Tennessee, ex rel. Lelsa L Parks.

Dennis Parks, appellee, *Pro Se* (no appellate brief filed).

**OPINION**

On February 22, 2001, the child involved in this action, D.P., was born to Alto Hunt ("Mother"). Two days later, Dennis Parks ("Parks") filed a voluntary acknowledgment of paternity ("VAP") in the trial court below. Mother also signed the VAP, certifying that Parks was the child's biological father. On March 12, 2001, Parks was incarcerated in Parchman Prison in the State of Mississippi, where he remained incarcerated until July 7, 2003.

Around August 2001, Parks' sister, Lelsa Parks ("Sister"), became the primary custodian and caretaker of D.P. She lived with the child in the home of Dessie Parks, the mother of Parks and Sister, located on Highway 57 East in Grand Junction, Tennessee.

On September 19, 2003, the State of Tennessee ("the State"), on behalf of Sister, filed a petition against Parks, seeking to set child support. A summons and a copy of the petition was sent to Parks at the home of his mother in Grand Junction, Tennessee, informing him that the matter would be heard by the trial court on October 30, 2003. At that time, Parks had been released from prison, but he was living in Mississippi as a condition of his probation. The hearing was conducted as scheduled on October 30, 2003; Parks not appear. After the hearing, on November 20, 2003, the trial court entered an order concluding that Parks had a legal obligation to support D.P. and ordering him to pay $371 per month in current support and $50 per month toward an arrearage of $26,000.

On April 2, 2004, the State filed a motion for contempt against Parks, based on his failure to pay support as required under the November 2003 support order. In May 2004, a hearing was had and Parks appeared at the hearing. On June 7, 2004, the trial court entered a judgment against Parks for the amount of child support due. Both Parks and Sister signed the trial court's June 2004 order. There was no appeal of the June 2004 contempt order.

On June 11, 2004, Parks filed a motion seeking to set aside the November 20, 2003 support order. He asserted first that the order was invalid because he was not served with notice of the State's petition for support, so a default judgment was improperly entered against him. Second, Parks claimed that he had reason to believe that D.P. was not his child, and he therefore requested DNA testing to prove or disprove his paternity. Parks said that DNA testing had recently been done on another of Mother's children, D.J.H., whom Mother had also claimed was Parks' child. The DNA testing showed that D.J.H. was not Parks' child. Parks said that learning that he was not D.J.H.'s father caused him to doubt whether he was D.P.'s father. Parks further alleged that D.P. continued to live with Sister in Tennessee, and that he, Parks, was living with them at his mother's house. Based on these circumstances, Parks asked the trial court to vacate the November 2003 support order, allow him to respond to the petition to set support, and allow him to obtain DNA testing to determine whether he is indeed the biological father of D.P. If the results of the DNA test showed that he was not the natural father of D.P., Parks asked to be relieved of his obligation to support the child. On the other hand, if the test showed that Parks was the biological father of D.P., he asked that he be designated as the primary residential parent.

A hearing was conducted on the matter on August 19, 2004. In an order dated September 28, 2004, the trial court granted Parks' motion, set aside the November 2003 support order based on lack of notice to Parks, and permitted him to undergo DNA testing to establish the paternity of the child.

On October 21, 2004, the State filed a motion to alter or amend the September 28, 2004 order, arguing that Parks had executed a VAP, and that, under Tennessee Code Annotated § 24-7-113(b), the VAP "shall be a basis for establishing a support order without requiring any further proceedings to establish paternity." T.C.A. § 24-7-113(b) (2000). The State pointed out that Parks had not rescinded the VAP under Tennessee Code Annotated § 24-7-113(c), nor had he challenged the VAP on the basis of fraud, duress, or material mistake of fact as is required under Section 24-7-113(e). Therefore, the State argued, the VAP was a conclusive legal finding of paternity, and it was improper for the trial court to set aside the VAP and permit Parks to disprove his paternity by DNA testing. Furthermore, the State argued, Parks signed the June 2004 order on contempt and did not raise the issue of lack of notice and did not appeal that order. Therefore, the State maintained, the June 2004 contempt order was a final order of the court and confirmed Parks' obligation to support D.P.

After a hearing, the trial court entered an order reserving its judgment on the State's motion to alter and amend but requiring Parks and D.P. to undergo DNA testing to determine the parentage of D.P. The trial court indicated that, if the DNA tests showed that Parks was the father of D.P., the issue would be moot. If, however, the tests indicated that he was not the father, the trial court would proceed accordingly. The DNA test was conducted, and it revealed that Parks was not biological father of D.P.

On February 10, 2005, the State filed a motion to amend the child support order to substitute Mother for Sister, because Sister was no longer receiving State benefits on behalf of the child, and such benefits had been awarded to Mother instead. Parks filed a response to the State's motion to substitute Mother for Sister claiming, among other things, that Mother had picked the child up from Sister's home for one week, then returned the child to Sister's home, and in the interim sought to obtain State benefits for the child, falsely representing to the State that the child was residing with her on a permanent basis.

Also on February 10, 2005, the trial court conducted a hearing on the remaining issues. Parks, Sister, and Mother all testified at the hearing. Parks testified that he and Mother had been in a sexual relationship at the time the child was conceived, and that he thought he was the biological father of D.P. Based on this understanding, he voluntarily signed the VAP, and he acknowledged that he did not sign it under fraud or duress. Although he admitted that he could read and that he had a high school education, he claimed that he did not know what he was signing. The following colloquy took place:

Q.[By counsel for the State] Did anybody trick you into –
A. [By Respondent] No.

Q. – signing that voluntary acknowledgment of paternity?
A. I don't know – I didn't agree – I didn't know what I was signing. I can't read that good. I didn't know what I was signing.
Q. But you did sign it?
A. Yes.
Q. And since the time – Do you think anybody told you to sign it based upon the facts that weren't true?
A. I don't know.
Q. You weren't deceived, were you?
A. No, not to my knowledge. I don't know.
Q. So you just signed it.
A. Yeah.
Q. And to this day, you don't feel like you've been defrauded because you signed it; is that right?
A. Yeah.
Q. And you don't think there's any mistake in facts that made you sign it; is that right?
A. That's right.
Q. – before you signed it?
A. No, I didn't read it before I signed it.
Q. Did anybody explain it to you?
A. I think the woman was trying to explain it somewhat what it was.

Parks said he began to question whether he was D.P.'s biological father after DNA testing showed that D.J.H., mentioned above, was not his. Parks explained that he and Sister had wanted to obtain joint custody of D.J.H. and retained a lawyer to do so. The lawyer advised him to obtain DNA testing on D.J.H. to complete the procedure of getting custody. Though he believed that D.J.H. was his child, the DNA test results proved him wrong.

Parks testified that, when the State filed its motion to set support in September 2003, he was living in Mississippi as a condition of his probation and did not move back to Tennessee until May 2004. He stated that he was never personally served with notice of the motion to set support, but that his mother was served with the summons at her house in Tennessee. Parks conceded that his mother and Sister eventually told him about the summons, but he maintained that he never received formal personal notice of it. Parks admitted that he appeared in court in June 2004 for the hearing on the State's contempt petition, and he acknowledged that he signed the contempt order requiring him to pay $371 per month and $50 towards his child support arrears. He said that, at the time, he did not object to the VAP because of the terms of his probation, that is, his probation required him to comply with the child support order in order to keep from going back to jail.

Sister testified as well. She confirmed that, when the summons was served in Tennessee, Parks was living in Mississippi. She acknowledged that she received welfare benefits from the State when she had custody of D.P. She claimed, however, that Mother later went to the welfare office,

falsely claimed that she had custody of the child, and had Sister's case closed and opened one on her own behalf, thus foreclosing Sister from obtaining benefits. Sister said that, contrary to Mother's claims, she actually remained the primary custodian of D.P., estimating that she had custody of the child twenty-six (26) to twenty-seven (27) days out of each month. On August 22, 2003, Sister and Mother executed a Declaration of Guardianship giving Sister joint guardianship of D.P. along with Mother. The Declaration stated that D.P. had lived with Mother from birth until August 2001, and then with Sister from August 2001 until the date of the Declaration. Sister explained that she executed the Declaration so that she would be authorized to take the child out of the jurisdiction and take her to the doctor, if necessary, without encountering legal difficulties.

Finally, Mother testified at the hearing. She stated that she has four children other than D.P., and that they all live with her. Mother asserted that she believed that Parks was the natural father of D.P. when the child was born. She said that, after D.P. was born, she had custody of the child during the week and allowed Sister to keep D.P. on weekends so that Sister and the child could visit Parks in prison in Mississippi. This arrangement, Mother stated, continued for one to two years. At the time of the hearing, Mother claimed that she had custody of the child five days a week. Mother initially testified that she had not received welfare for D.P., but later clarified that she received food stamps, not cash. She said that she received $140 from the State each month, and she assumed that the total amount was for all five of her children.

At the conclusion of the hearing, the trial court held in favor of Parks and dismissed the case against him. The trial court found that the November 20, 2003 order setting support was invalid because Parks was not properly served with process, but then determined that his voluntary court appearance in June 2004 constituted a "consent to jurisdiction and service of the Court." Despite this, the trial court dismissed the case against Parks, holding that the November 2003 support order was never valid. The court reasoned:

> Now, default cannot be taken against someone unless [Tennessee Rule of Civil Procedure] 55.01 is complied with. There's been no compliance in this case with Rule 55.01. There was no five days' notice given to the defendant of any default action against him. The rule says that certain facts may be made known by affidavit or otherwise. Otherwise certain facts were made known to the Court but defendant was not given notice – five days' notice under 55.01 when the order was entered on November 20, 2003. . . . [T]hat gets us back to the June 7, 2004 order which the defendant voluntarily signed.
> Now, the motion filed to set aside the default or to set aside the – even though it doesn't specifically address the voluntary acknowledgment of paternity – was filed on June 11, 2004 which is well within two years of September 23, 2003, and under Rule 55, a motion to set aside a default judgment is governed by Rule 60.02. And under Rule 60.02, a defendant, one against whom a judgment has been entered, is entitled to relief when there has been a mistake, when there has been fraud, same language which is in [Tennessee Code Annotated §] 24-7-113(a) denoted as intrinsic or extrinsic, misrepresentation or any other reason, and a motion under 60.02, though,

for reasons (1) and (2), which being mistake and fraud, has to be filed within a reasonable time, but under (1) and (2) it can't be filed more than one year after the proceeding was entered.

Well, there never was a valid order entered on November 20th so the valid order that was entered had to be on June 7, 2004. So the Court holds that there never was a valid order of support entered in this case, that the defendant was never served and never properly before this Court until June 7, 2004, and that, therefore, the order ordering the paternity tests which determined that he had zero probability of being the father of this child is admitted, and further the Court holds that the voluntary acknowledgment of paternity was never filed in this court until today.

And based upon all those reasons, the Court finds that the defendant, Mr. Parks, is not the father of the child and dismisses the case as to him.

From this order, the State now appeals.

On appeal, the State argues that the trial court erred in vacating its November 20, 2003 child support order based on insufficiency of service of process, because Parks waived any insufficiency of service claim when he voluntarily appeared and signed the June 7, 2004 contempt order. The State further contends that the trial court incorrectly relied on Rule 55 of the Tennessee Rules of Civil Procedure in this case to conclude that the State improperly obtained a judgment by default, because actions under the Rules of Juvenile Procedure do not require that parties file written responsive pleadings, obviating the need for default judgment procedures. In addition, the State argues that the trial court erred in granting Parks prospective relief, because he failed to show fraud, duress, or mistake of fact when he signed the VAP, a showing that would have allowed him to take a parentage test. Because Parks failed to make this threshold showing, the State argues, the trial court erred in allowing him to take a DNA test, which disestablished him as the father of the child.[1]

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. T.R.A.P. 13(d); *see Granderson v. Hicks*, No. 02A01-9801-JV-00007, 1998 WL 886559, at \*2 (Tenn. Ct. App. Dec. 17, 1998). We review questions of law *de novo*, with no such presumption of correctness. T.R.A.P. 13(d); *Granderson*, 1998 WL 886559, at \*2. The decision to grant relief from a judgment pursuant to Tennessee Rule of Civil Procedure 60.02 is a matter within the trial court's sound discretion. Accordingly, we review the trial court's decision on such matters for an abuse of that discretion. *See State ex rel. Taylor v. Wilson*, No. W2004-00275-COA-R3-JV, 2005 WL 517548, at \*2 (Tenn. Ct. App. Mar. 3, 2005).

In this case, Parks executed a VAP two days after the child was born. A VAP is a mechanism by which unmarried fathers may "legally establish their paternity without the intervention of the court." *In re C.A.F.*, 114 S.W.3d 524, 528 (Tenn. Ct. App. 2003). Tennessee Code Annotated § 24-7-113(a) provides that the VAP, "unless rescinded pursuant to subsection (c),

---

[1]Parks did not file an appellate brief or appear for oral argument.

shall be conclusive of that father's paternity without further order of the court." T.C.A. § 24-7-113(a) (2000). The purpose of this statutory provision "is to make it possible to decree child support orders without first having to go through a paternity proceeding." *In re C.A.F.*, 114 S.W.3d at 530. Subsection (c) permits the VAP to be rescinded within sixty (60) days upon the filing of certain sworn documents. If the VAP is not rescinded within sixty days pursuant to section 24-7-113(c), the VAP "may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact." T.C.A. § 24-7-113(e) (2000).

Relying on the VAP, the State filed its petition to set support against Parks as the legal father of D.P. The State does not dispute Parks' assertion that he was not served with a summons or a copy of the petition, either personally or by publication. A copy of the summons, which has been included in the record on appeal, shows that it was sent to Parks in Tennessee at his mother's home in Grand Junction at a time when Parks lived in Mississippi. It is also undisputed that Parks did not appear at the October 30, 2003 hearing at which the trial court determined that Parks "has willfully and without good cause neglected and failed to provide for" his child, and that he had a legal obligation to support D.P. The trial court below held that, under these circumstances, the November 2003 order was invalid because the State did not comply with the procedural requirements of Tennessee Rule of Civil Procedure 55 in obtaining a default judgment against Parks.[2]

The State argues that the procedures in Rule 55 of the Tennessee Rules of Civil Procedure do not apply in this case because Rule 20 of the Tennessee Rules of Juvenile Procedure is applicable. Rule 20 of the Rules of Juvenile Procedure provides that "[a] written answer to a petition shall not be required." Because no answer to the petition for support was required in this case, the State argues, it had no obligation to file an application for a default judgment in the absence of such a pleading. Rather, it had the option to either appear at the hearing and argue its case *ex parte*, or continue the hearing and seek a judgment by default under Rule 55 of the Rules of Civil Procedure. In other words, because Parks was not required to file a responsive pleading, his failure to do so would not trigger the State's obligation to file a motion for a default judgment under Rule 55 of the Rules of Civil Procedure. Therefore, the State maintains, the trial court erred in setting aside the child support order based on the State's failure to comply with Rule 55.

In addition, the State argues, Parks waived any defense that service was defective or that any procedural requirements were not met when he submitted to the jurisdiction of the court by appearing at the May 2004 contempt hearing and when he signed the June 2004 order on contempt. The State asserts that, when a party appears and does not object to the adequacy of service of process, he waives his objection. Because Parks waived his objection to service of process, the State contends, the trial court erred in setting aside the November 20, 2003 order under Rule 60.02 of the Tennessee Rules of Civil Procedure.

---

[2]"The Tennessee Rules of Civil Procedure shall govern all paternity cases." T.R.J.P. 1(b). Under Rule 55 of the Tennessee Rules of Civil Procedure, a plaintiff may apply for a default judgment when a defendant "fail[s] to plead or otherwise defend as provided by these rules . . . ." The application for a default judgment must be served on the party against whom the judgment is sought five days before the hearing on the application. T.R.C.P. 55(a).

The trial court's stated reason for setting aside the November 20, 2003 support order was the State's failure to properly serve Parks with notice of the petition for support and its failure to comply with the notice requirements of Rule 55 of the Tennessee Rules of Civil Procedure in seeking a default judgment against Parks.[3] The State correctly points out, however, that Parks waived any objection based on his lack of notice when he personally appeared before the trial court at the May 2004 hearing and when he signed the June 2004 order. When a defendant appears, voluntarily signs an order of the court, "and does not take issue with venue, adequacy of service of process, personal jurisdiction, or other similar matters, the courts customarily find that the party has waived its objections to these matters." *Dixie Sav. Store, Inc. v. Turner* 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988). Thus, even assuming that Parks was not served with process in the October 2003 proceeding regarding the State's petition for support, the fact remains that he did not object based on any lack of notice during the May 2004 hearing on the State's petition for contempt.[4] In fact, he affirmatively agreed that he was in contempt of the child support order and indicated so by signing the June 2004 order. Parks did not appeal the order holding him in contempt, and it became a final order. Therefore, Parks is obligated to make the support payments in accordance with that order.[5]

The trial court also granted Parks prospective relief, absolving him of any further responsibility to support D.P., based on the results of the DNA test which revealed that he was not the child's biological father. The trial court acknowledged that Parks' motion to set aside the support order did not "specifically address the voluntary acknowledgment of paternity." Despite this, the trial court permitted Parks to take a DNA test to determine whether he was the natural father of D.P.

On appeal, the State argues that the trial court erred in allowing Parks to take the DNA test without first making a threshold showing that fraud, duress, or mistake of fact occurred in the signing of the VAP. Because he should not have been permitted to take the DNA test, the State argues, the results of the DNA test should not be considered. Therefore, because the VAP conclusively shows that Parks is the legal father of D.P., he should not be relieved of paying child support on D.P.'s behalf.

_____

[3] It appears that the trial court set aside the November 20, 2003 order pursuant to Rule 60.02(5) of the Tennessee Rules of Civil Procedure, which allows a court to set aside a final judgment for "any other reason justifying relief from the operation of the judgment." The trial court may have set aside the prospective portion of the order under subsection (4) of the Rule, which permits the setting aside of a final order when "it is no longer equitable that a judgment should have prospective application." T.R.C.P. 60.02(4); *see State ex rel. Taylor v. Wilson*, No. W2004-00275-COA-R3-JV, 2005 WL 517548, at *1-*2 (Tenn. Ct. App. Mar. 3, 2005). In any event, the court could not have granted relief under subsection (1), based on mistake, or (2), based on fraud, because motions to set aside under those provisions must be brought within one year of the entry of the order from which relief is sought. T.R.C.P. 60.02(5).

[4] Though the transcript of the May 2004 hearing is not included in the appellate record, it is undisputed that Parks did not raise the issue of insufficient service of process or lack of notice until his June 11, 2004 motion to set aside the November 2003 order.

[5] Parks cannot challenge the finding of contempt by claiming that he is not the biological father of the child. *State ex rel. Whitfield v. Honeycutt*, No. M1999-00914-COA-R3-CV, 2001 WL 134597, at *3 (Tenn. Ct. App. Feb. 16, 2001).

Tennessee Code Annotated § 24-7-113(e) specifically provides that, after sixty days, a VAP "may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact." T.C.A. § 24-7-113(e)(1) (2000). The statute sets out the manner in which a party must challenge the VAP:

> The challenger must institute the proceeding upon notice to the other signatory and other necessary parties including the Title IV-D agency within five (5) years of the execution of the acknowledgment, and if the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the acknowledgment of paternity, then, and only then, the court shall order parentage tests.

T.C.A. § 24-7-113(e)(2) (2000). Thus, if the challenger institutes a proceeding and presents evidence that there is a substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the VAP, then DNA tests can be ordered, and the results of the DNA test can be used to rescind the VAP.

In the instant case, the issue is complicated by the manner in which Parks asserted his challenge to the VAP.[6] The challenge to the VAP was made indirectly in Parks' June 11, 2004 motion to set aside the November 20, 2003 support order. In that motion, Parks asked the trial court to set aside the support order and to permit DNA testing so that he could either be relieved of his duty to support the child or be given custody of the child. In support of his request for DNA testing, Parks explained the basis on which he believed that a material mistake of fact likely existed when he executed the VAP. He alleged that he had believed that another child of Mother, D.J.H., was his child, but that DNA testing later showed that he was not. This implies that there was a substantial likelihood that Parks was mistaken about his paternity when he signed the VAP for D.P.[7] In its September 28, 2004 order, issued after a hearing conducted on August 19, 2004, the trial court permitted Parks and D.P. to undergo DNA testing. The results showed that Parks was not the biological father of D.P. and, in effect, a "material mistake of fact" had become a foregone conclusion.

We must determine whether the trial court erred in permitting the DNA tests under these circumstances. The State argues that Parks failed to submit evidence of a "substantial likelihood that . . . a material mistake of fact existed in the execution of the acknowledgment of paternity" prior to the administration of the DNA tests. However, the trial court made its decision to allow the DNA

---

[6]The State does not argue that the proceeding in which the issue was raised was improper, or that notice was defective under the statute. Rather, the State takes issue only with the trial court's conclusion that Parks sufficiently established fraud, duress, or material mistake of fact in his execution of the VAP.

[7]Parks did not allege that fraud or duress was involved in his signing of the VAP. At the February 10, 2005 hearing, Parks admitted that he did not sign the VAP under fraud or duress. Therefore, Parks' only basis for rescinding the VAP would be a material mistake of fact.

test after the August 19, 2004 hearing, and there is no transcript of that hearing in the record on appeal. In the September 28, 2004 order resulting from that hearing, the trial court concluded that Parks should be allowed to undergo a DNA test, indicating that Parks showed a substantial likelihood of material mistake. *See In re B.N.W.*, No. M2004-02710-COA-R3-JV, 2005 WL 3487792, at \*26 (Tenn. Ct. App. Dec. 20, 2005) (stating that, where no transcript is in the record, the appellate court presumes that the evidence would support the action of the trial judge). Furthermore, this Court has indicated, albeit in *dicta*, that one who signs a VAP in the sincere belief that he is the father of the child, and then later shows that he may have been mistaken about that belief, can establish a "material mistake of fact" sufficient to challenge the VAP under Section 24-7-113(e). *See In re C.A.F.*, 114 S.W.3d at 529-30. We recognize that Tennessee's policy which strongly favors requiring biological parents to bear responsibility for their own children "also favors relieving putative fathers of the burden of supporting children who have been shown, through conclusive evidence such as DNA testing, not to be their natural offspring." *See Wilson*, 2005 WL 517548, at \*4. Thus, under all of these circumstances, we cannot conclude that the trial court erred in finding that Parks had made the requisite showing of a substantial likelihood of a material mistake of fact in his execution of the VAP and in permitting Parks to undergo DNA testing on that basis.

Given the fact that the DNA test, properly ordered, disestablished Parks as the biological father of D.P., we must also conclude that the trial court did not err in effectively permitting Parks to rescind his VAP. Consequently, the trial court properly granted Parks prospective relief from the November 20, 2003 support order as of June 11, 2004, the date of his petition to set aside the order and to be relieved of his obligation to support D.P. *See id.* at \*5. Therefore, while we reverse the trial court's decision to set aside the November 20, 2003 order, we affirm the trial court's decision insofar as it granted Parks prospective relief from any obligation to support D.P.

The decision of the trial court is affirmed in part and reversed in part as set forth above, and the cause is remanded to the trial court for further proceedings. Costs on appeal are to be taxed equally to Appellant State of Tennessee, ex rel. Lelsa Parks, and to Appellee Dennis Parks, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE